## THOMAS H. HOOPER *vs.* GEORGE W. F. VERNON.

*Malicious prosecution—Probable cause—Evidence.*

In an action for malicious prosecution in having procured the plaintiff to be arrested and indicted on the charge that he had, in violation of section 111 of Article 27, of the Code, secreted certain mortgaged chattels, with intent to defraud the mortgagee, it was shown that the plaintiff had obtained a loan from the defendant, and to secure the same had given a mortgage on his household furniture, which he had insured for the benefit of the mortgagee, the defendant's principal, and delivered the policy to the defendant. In the policy there was a condition that it should be void if the goods were removed from the place named in it, the residence of the plaintiff. Subsequently he had the mortgaged furniture removed to a warehouse where it was stored in the name of his wife, and subject to her order, and he and his wife moved to a boarding house, without notifying the defendant of such removal of the goods, or of his own change of residence. Knowing these facts, and having been informed that the plaintiff was about to remove to New York to live, the defendant, before the warrant was actually sworn to and obtained, stated the case to the magistrate, who was also an attorney at law, and by his advice the plaintiff was arrested. HELD:

That the evidence was legally sufficient to show probable cause for the institution of the prosecution.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, ROBINSON, IRVING, FOWLER, MCSHERRY, and BRISCOE, J.

*Thomas G. Hayes,* for the appellant.

*Robert Crain,* and *William S. Bryan, Jr.,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This suit was brought on the 27th day of March, 1890, by the appellant against the appellee. It is an action for malicious prosecution, and the declaration charges that the defendant falsely, maliciously, and without any reasonable or probable cause, procured the plaintiff to be arrested and indicted on the charge that he had, in violation of *Article* 27, *section* 111, of the Code, secreted certain mortgaged chattels, with intent to defraud the mortgagee. This section of the Code makes it a misdemeanor, punishable by imprisonment in jail for not more than six months, or by a fine of not more than five hundred dollars, or both, in the discretion of the Court, for any mortgagor of personal property to *secrete* the same with intent to defraud the mortgagee or his assigns.

There was some argument at bar as to the construction of this section. Counsel for the appellee contended that the mere *removal* of mortgaged chattels from the place where they were located when the mortgage was executed, without the written assent of the mortgagee, is thereby made an offence, no matter whether the removal be from one county or city to another or not. On the other hand, counsel for the appellant insists that where the removal is from one place to another, within the same city or county, there must be *secreting* in order to constitute the offence. We do not, however, find from the record that this question is so presented by any ruling of the Court below as to authorize or justify this Court in deciding it. The declaration complains that the plaintiff was wrongfully arrested on the charge of *secreting* the goods, and such is the charge in the warrant under which the arrest was made.

The declaration also charges that the proceedings under the arrest and indictment in the Criminal Court were terminated by the entry of a *nolle prosequi* by the

Hooper *vs.* Vernon.

State's Attorney of Baltimore City, and this entry was made at the instance of the defendant, and with the consent of the State, and the plaintiff was thereby discharged. On this point a strong argument was made by counsel for the appellee to the effect that the State's Attorney had *no power* to enter a *nolle prosequi*, and that this entry did not *terminate* the criminal prosecution, so as to enable the plaintiff to bring his action for malicious prosecution. This is a very grave and difficult question, one that has never before been argued before this Court, and one that ought not to be decided, unless it is clearly presented for decision. We do not find it so presented in this case. None of the rulings of the Court adverse to the appellee are before us. The verdict and judgment were in his favor, and he has taken no exceptions, and has not appealed.

After the testimony was closed the Court rejected the four prayers of the appellant, and granted the defendant's prayer that there "is no legally sufficient evidence of a want of probable cause for the prosecution mentioned, in the declaration, and their verdict must be for the defendant." This, of course, ended the case. The jury were bound by the instruction to render, as they did, a verdict for the defendant. Was there error in this ruling? Without doubt, the *legal sufficiency* of evidence to support the issue sought to be established is a question of *law* for the Court, and it is equally clear that, in cases of malicious prosecution, the *onus* is on the plaintiff to prove and show, by facts and circumstances, the want of probable cause for the criminal prosecution of which he complains. This is an essential part of his case. Probable cause as defined in *Munns vs. Dupont*, 3 *Wash. C. C. Rep.*, 31, is such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to warrant a cautious man in believing the party accused to be guilty. This definition was accepted by this Court in

*Boyd vs. Cross,* 35 *Md.,* 197, and in several other cases.
It is incumbent on the plaintiff to establish the want
of such probable cause, and whether the evidence in
any given case is legally sufficient for that purpose is a
question of law; or to quote the language of this Court
in *Thelin vs. Dorsey,* 59 *Md.,* 545, "what will amount
to the want of probable cause, in any case, is a ques-
tion of law for the Court."

This brings us to an examination of the facts of the
case as they appear in the record, and in dealing with
them we must consider them in the light in which they
appeared to the defendant when he instituted the prose-
cution.    The facts about which there is no dispute are
substantially as follows: The defendant, Vernon, is a
pension agent or attorney, and also engaged in the busi-
ness of loaning small sums of money for poor people.
The plaintiff, Hooper, is connected with the press as a
writer and reporter for the newspapers, and applied to
Vernon for the loan of one hundred dollars, offering as
security his household and kitchen furniture in the
premises 1127 North Gilmor street where he then re-
sided with his family.    At the time of the application
he told Vernon that Mr. S. G. Miller, a real estate agent
and broker, who had his office next to that of Vernon,
had a mortgage on his furniture, on which there was a
balance of $37.50 due, which he was anxious to pay,
and referred him to Mr. Miller for information.    Vernon
agreed to see Miller, and to lend the amount at six per
cent. interest, if his agent, Stanton, found the security
ample.    Afterwards Vernon informed Hooper he could
get the loan, and on the day appointed Hooper called
and executed the mortgage.    The money loaned belonged
to Mrs. Gardner of York City, Pennsylvania, and the
mortgage, which is dated February 28th, 1889, was given
to her.    It covers the furniture "now in premises known
as 1127 North Gilmor street, Baltimore City, Mary-

land.'' It provides that if Hooper shall pay the mortgagee, or her authorized agent and attorney, the sum of one hundred dollars with legal interest thereon, on or before the 23rd of February, 1890, it shall be void, and that in the meantime Hooper shall remain in possession; but, in case of default in paying either principal or interest, the mortgagee or her authorized agent or attorney may take possession and sell the mortgaged property after one day's notice, at public or private sale, at his or her election. The *bona fides* of the consideration was sworn to by Vernon, as agent for the mortgagee. At the same time Hooper executed his promissory note to Mrs. Gardner, dated February 23rd, 1889, for one hundred dollars payable twelve months after date. He also, on the same day, at the request or demand of Vernon, had the mortgaged chattels *insured* for the benefit of the mortgagee and delivered the policy to Vernon. In this policy there was a condition that it should be void if the goods were *removed* from the place named in it, the place so named being 1127 North Gilmor street.

These are the undisputed facts in regard to the negotiation of the loan, the execution of the mortgage, and the insurance of the property. They show that Vernon, as was his imperative duty, had taken every proper precaution to secure his client whose money he thus loaned to an entire stranger, not only to her, but to himself. Now, what occurred between this and the date of Hooper's arrest which was effected on the 9th of August, 1889? On the 15th of the preceding July, Hooper had the mortgaged furniture *removed* from 1127 Gilmor street to a storage warehouse 221 South Eutaw street, where it was stored in the name of Mrs. L. V. Hooper, who was his wife, and subject to her order. On the same day he and his wife went to a room they had previously rented at Calvert and Pleasant streets, where they remained a week, and then removed to a boarding house on

Lombard street near Eutaw street, where they remained until the 5th of August, when they removed to furnished rooms in 214 North Liberty street.    In outward appearance this removal of the furniture was not clandestine. There was no attempt at concealment.    But it was made without the knowledge of Vernon.    Hooper never gave him any notice of it, or any intimation of the purpose for which it was made, or where he was going to live, though he must have known that such removal vitiated the policy of insurance on the goods.

Sometime before the arrest Vernon heard that the goods had been removed, and then at once made inquiries, and requested others to inquire where Hooper had moved to, and where the furniture was, and was informed he was then living at 214 North Liberty street, was constantly seen on the streets, and "*that he intended going to New York.*"    This information was from a source upon which a cautious man would be justified in relying. Stanton, the agent of Vernon, testifies that at Vernon's direction, he had two interviews with Hooper, the first in the latter part of July, at 214 North Liberty street, in the morning, when witness said to him "from what we can learn you have removed from 1127 North Gilmor street," to which Hooper replied, "it is a fact.    I am located here."    Witness then said "it is important to have the policy of insurance changed from the number in the policy to the present location of the goods; it was as much your benefit as ours;" to which Hooper replied "I will attend to it at once," and witness then left; that the second interview was at the same place, in the early part of August, when witness said to him "Mr. Hooper you have not attended to the policy after making the promise," to which the reply was "I will attend to it." Witness then said to him: "To save you any inconvenience, if the goods are here, or if you will let me know where they are, we will attend to having the policy transferred;"

and he replied "I will not inform you, but will inform Col. Vernon." Stanton also swears that he at once reported what was said at these two interviews to Vernon, as they severally occurred. Hooper in his testimony says he met Stanton on the street, on the 8th of August, the day before he was arrested, and that Stanton then requested him to transfer the policy to the place where the furniture was then located, and he promptly replied he would do so; that he had unintentionally overlooked the matter, and that he would attend to it; that this was the only conversation he had ever had with Stanton; that he had never seen him at 214 North Liberty street, or any where else, before his arrest, and that the interview as given above was all that occurred. The conflict of testimony on this point is the only one in the case, and assuming, as we must, that Hooper's version as to the interviews between him and Stanton is true, it has very little influence upon the other undisputed facts. It is still true that Hooper never, after the 15th of July, informed Vernon of the removal of the goods, as he ought to have done, never told him where they were located, or for what purpose they had been removed, and never in fact saw him, or gave him any information whatever on the subject, nor went to him to explain the matter, even after he heard there was a warrant out for his arrest. These facts and circumstances, within his own knowledge, with the information which he had when he swore out the warrant, that Hooper was about to remove to New York to live, were well calculated to create the strongest suspicion, and would, in our judgment, have warranted a prudent and cautious man in believing that he had *secreted* the goods with intent to defraud the mortgagee. But, before the warrant was actually sworn to and obtained, Vernon stated the case to Mr. Benzinger, the magistrate who issued it, who was also an attorney at law; and Ben-

zinger advised him to have Hooper arrested on the charge set out in the warrant, viz., that Hooper "had violated *sec.* 111, *Art.* 27 of the Code of Public General Laws, by secreting one upright piano and other mortgaged personal property, with intent to defraud a certain Annie L. Gardner, mortgagee, and to defeat her lien under said mortgage." This was the charge to which Vernon made oath, and we have no doubt whatever but that he had reasonable and probable cause for so doing. He did this, and instituted the criminal prosecution, as he swears, without malice, and solely to protect the interest of his client, the mortgagee. And after the arrest he employed detectives and took other means to find out where the goods were.

Having thus decided there was probable cause for the institution of the criminal prosecution mentioned in the declaration, it is hardly necessary to say we find no legally sufficient evidence of a want of such probable cause. The principal argument upon which the want of probable cause is based, is that Vernon did not hunt up Hooper, and find out from him, if he could, to what place the goods had been removed. But surely he was under no obligation, nor was it his duty, to do this. He assumed, and had the right to assume, that Hooper was an honest debtor, and would do what an honest man would do in such circumstances. As soon as he had probable cause to believe that Hooper had secreted the goods for the purpose of defrauding the mortgagee, it would have been folly for him to have acted otherwise than he did.

We find no error in the instruction granted, and therefore affirm the judgment.

*Judgment affirmed.*