## W. T. GRANT COMPANY, et al. *v.* GUERCIO

[No. 128, September Term, 1967.]

*Decided March 6, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, McWILLIAMS and SINGLEY, JJ.

*Wilbur D. Preston, Jr.,* with whom were *Ernest A. Sciascia* and *Stanley B. Rohd* on the brief, for appellants.

*Everett L. Buckmaster,* with whom were *George W. White, Jr., John F. Foley, Jr.* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The principal question presented by the appeal in this malicious prosecution case is whether the trial court erred in instructing the jury that it could infer a lack of probable cause when the accused has been acquitted of the criminal charge.

The set of events on which the accusation and arrest was based occurred in and near the store of W. T. Grant Company at the Security Plaza Shopping Center in Baltimore County. The second stage of the incident wherein the accused was acquitted of shoplifting happened at the preliminary criminal hearing before the magistrate at Woodlawn. The third and final action took place at the civil trial for damages in the Circuit Court for Baltimore County at Towson. The principal actors in this unfortunate sequence of events include the accused shopper (Joan Guercio), another shopper, the informant (Sonia Balmer), the assistant store manager (Frank Mayonado) and the arresting officer (Joseph Stricker).

The accused shopper drove to the Grant store in the family automobile around 7 o'clock in the evening of a mid-July day

in 1965, while her husband stayed at home to take care of the children, for the purpose of buying a new harness for their dog and to look for white gloves. She was carrying a beige bag that had been purchased several years before at a Grant store in New York. She drank a malted milk at the luncheonette counter and then browsed about in several other departments. When she came to the handbag counter and saw a black bag that was like one of her own, she stopped to inspect it and having done so put it back, but she did not say what she did with the beige bag while she was examining the black one.

The informant (a supervisor at Hutzler Brothers), who was also shopping in the Grant store, and had been watching a woman with a black bag in her hand look "from left to right" and "from side to side" several times, saw the woman place a black bag on the counter, pick up a beige bag and put it on her arm. The woman then pulled what were presumed to be tickets off the beige bag, dropped them on the counter and walked away. The informant told an employee that she had witnessed a shoplifting and wanted to see the manager. The assistant in charge approached the informant promptly.

As soon as the assistant manager had been told by the informant that she had seen a woman switch handbags they went to the purse counter where the manager found an old and crumpled black handbag. After pointing out the suspected shoplifter to the manager and giving him her name and address, the informant resumed shopping. The manager returned to the front of the store and stood near the cash registers at the exit doors where he could watch the shopper that had been pointed out to him. On two occasions he saw her come toward the front, look at him and go back. Finally when he was called to one of the registers in response to a call for change, the shopper he had been watching left the store hurriedly. He followed her to the parking lot, told her he "thought that she had my handbag" and asked her to come back into the store. She did and they went to the office. The shopper asserted that the handbag was her own and that she had purchased it from a Grant store in New York two or three years before. She then opened the bag and, noticing a shoe polish stain in it, told the manager that she had used it the previous week-end; that she had placed a

bottle of shoe polish in it at that time; that the polish had leaked causing the stain; and that if he would accompany her to her home she would show him the bottle of polish. The manager informed her that he could not leave the store. When she called her husband, the manager asked him to come to the store but he said that he could not. Fifteen minutes later the husband called the store, told the manager that he wanted his wife released and that if the manager did not call the police, he would call them. The manager then called the police.

When the arresting officer arrived at the store, the manager informed him that he wanted a warrant for the arrest of the shopper. She voluntarily accompanied the officer and assistant manager to the police station at Woodlawn where a warrant was obtained charging the accused with shoplifting. She was taken into custody and the charge was docketed. Afterward, following the usual procedures, she was taken to Towson for fingerprinting and photographing.

The preliminary criminal hearing held a week after the arrest was continued to permit the magistrate to hear additional evidence, but at the conclusion of the resumed hearing about six weeks later, the magistrate dismissed the charge against the accused.

Within less than a month the accused shopper filed suit charging the store and its assistant manager with slander, false arrest and imprisonment and malicious prosecution. When the case was tried, the jury, having been asked to make one assessment of damages covering all three cases should it find for the plaintiff, returned a verdict for $30,000 ($15,000 for compensatory damages and $15,000 punitive damages). Upon the denial of the motion for a new trial, final judgment was entered and this appeal followed.

At the close of the evidence, the defendants requested the trial court to instruct the jury to the effect—

> "that the acquittal of the plaintiff on the criminal charge before the magistrate is no evidence of the lack of probable cause since it amounts only to a decision that a fact of guilt has not been proven beyond a reasonable doubt,"

but the court declined to do so. Instead, having refused all prayers as offered, it proceeded to instruct the jury, in part, as follows:

> "The plaintiff must prove that the defendant did not have any probable cause for the issuance of the warrant. * * * ['T']he law says that where there is an acquittal of the party accused that the jury may infer from the acquittal that there was a lack of probable cause, yet, the mere fact that the accused, * * *, was acquitted is not conclusive, for, probable cause may exist for the institution of a criminal proceeding notwithstanding the fact that the trial magistrate, for one reason or another, acquits the accused party. You may infer lack of probable cause from the acquittal, yet, it is not conclusive upon you."

The defendants-appellants duly excepted to all adverse rulings and instructions. Subsequently a motion for a new trial was filed.

Although the trial court acknowledged in its memorandum on the motion for a new trial that the defendants-appellants "with some justification contend that the court erred in its instructions to the jury as to the absence of probable cause for the issuance of the warrant [in] the malicious prosecution case," it nevertheless (for the reasons stated in the memorandum [1])

---

1. As the memorandum shows, the court overruled the motion for a new trial—

Because it had correctly instructed the jury that the plaintiff had the burden of proving that the defendants had no probable cause to initiate the prosecution.

Because the brief portion of the charge not in conformity with the law of *Norvell v. Safeway Stores*, 212 Md. 14, cannot be considered prejudicial under the facts.

Because the jury, having heard all of the evidence on which the warrant was predicated, could judge the sufficiency of that evidence and did not need the acquittal to "throw light" on the matter.

Because the jury, having heard the same facts as were presented to the trial magistrate, undoubtedly believed that the facts established the absence of probable cause without reference to the action of the magistrate.

overruled the motion for a new trial.

On appeal, the appellants contend that the trial court erred when it instructed the jury that it could infer a lack of probable cause based on an acquittal of the person accused and that since the erroneous instruction was prejudicial, the court erred when it denied the motion for a new trial.

Conversely, the appellee, although she made no motion for a directed verdict, contends that the instruction in the context given was mere surplusage and therefore not prejudicial because on the undisputed facts the court should have instructed the jury as a matter of law that there was a lack of probable cause.

(i)

While the discharge of an accused at the preliminary hearing of a criminal charge is *prima facie* evidence of a lack of probable cause, *Safeway Stores v. Barrack,* 210 Md. 168, 122 A. 2d 457 (1956) and *Banks v. Montgomery Ward & Co.,* 212 Md. 31, 128 A. 2d 600 (1957), it is clear that an acquittal after a trial in a criminal case is not in and of itself evidence of want of probable cause in a subsequent civil suit for malicious prosecution. *Banks v. Montgomery Ward & Co., supra; Norvell v. Safeway Stores,* 212 Md. 14, 128 A. 2d 591 (1957); *Kennedy v. Crouch,* 191 Md. 580, 62 A. 2d 582 (1948); *Stansbury v. Luttrell,* 152 Md. 553, 137 Atl. 339 (1927). Also see *Prosser on Torts* (3rd ed.), § 113, p. 864; 59 A.L.R.2d 1413, 1415. The reason for the rule, as stated in the *Norvell* case, at p. 20, is that the acquittal—

> "may be based on a mere lack of proof beyond a reasonable doubt, and throws no light on the sufficiency of the evidence on which the instigator acted at the

---

Because the effect on the jury of that part of the charge concerning malicious prosecution was minimized by the double admonition of the court that the acquittal was not conclusive and served only as the basis of a possible inference by the jury.

And because the jury, having found an absence of probable cause in the slander and false arrest and imprisonment cases which did not involve an acquittal, it is highly improbable that the acquittal influenced the finding of an absence of probable cause for the prosecution.

time the proceedings were instituted, because the verdict may have been based on other evidence produced by the defense that was unknown to the instigator."

If the facts or inferences drawable from the "probable cause" that motivated a criminal charge are clear and undisputed, the question is one of law for the court, but if such facts or inferences are disputed, it is a question of fact for the jury. *Nance v. Gall*, 187 Md. 656, 50 A. 2d 120 (1946), modified on other grounds, 187 Md. 674, 51 A. 2d 535 (1947). Also see *Jannenga v. Libernini*, 222 Md. 469, 160 A. 2d 795 (1960) ; *Banks v. Montgomery Ward & Co., supra. Cf. Davis v. Quille,* 248 Md. 631, 237 A. 2d 745 (1968). Moreover, when the facts are in dispute, the jury, after being instructed as to what constitutes "probable cause,"—see *Stansbury v. Fogle,* 37 Md. 369 (1873) and *Nance v. Gall, supra,* at p. 669—should be left to determine its presence or absence.

Under the circumstances of this case, we think it is clear that the question as to whether there was probable cause for the prosecution was one of fact and not of law. It follows that the court erred when it instructed the jury that it could infer "lack of probable cause from the acquittal" of the accused.

(ii)

It likewise follows, since the jury should have been permitted to decide the conflicts in the evidence under proper instructions, that such parts of the instructions as were erroneous were prejudicial and constituted reversible error. See *Critzer v. Shegogue,* 236 Md. 411, 204 A. 2d 180 (1964).

Contrary to one of the necessary elements of a case for malicious prosecution—absence of probable cause for the criminal proceeding [2]—the instruction of the lower court that the jury could infer a lack of probable cause from the acquittal had at

2. The four elements as set forth in Safeway Stores v. Barrack, 210 Md. 168, at p. 173, are "(a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) *absence of probable cause for the proceeding* [italicization supplied], and (d) 'malice,' or a primary purpose of instituting the proceeding other than that of bringing an offender to justice."

least two prejudicial consequences: one, it had the effect of allowing the jury to consider the acquittal of the accused shopper in a way that had no bearing on the question as to whether or not the assistant manager had probable cause to swear out the warrant of arrest; and, two, it resulted in permitting the jury to weigh the conduct of the assistant manager with relation to the dismissal of the criminal proceeding.

As to whether or not the assistant manager had probable cause to charge the accused with shoplifting, the jury, having heard the detailed testimony of the informant, the accuser and the accused, as was its right, could then decide from the evidence the presence or absence of probable cause, but it should not have been told by the trial court that it could infer the absence of probable cause from the fact that the accused had been acquitted. In so doing, the court prejudiced the right of the defendants to have the jury make its decision solely on the evidence presented. The motion of the defendants for a new trial should have been granted.

*Judgment reversed and case remanded for a new trial; costs to abide the result.*