# GLADDING CHEVROLET, INC. *v.* FOWLER

[No. 209, September Term, 1971.]

*Decided February 15, 1972.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Phillips L. Goldsborough, III,* with whom were *Smith,*

*Somerville & Case* and *Nathaniel W. Hopper* on the brief, for appellant.

*Moses Cohen,* with whom was *Robert E. McManus* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here set aside a judgment for malicious prosecution in the amount of $15,000.[1] We conclude that because appellant, Gladding Chevrolet, Inc. (Gladding Chevrolet), relied upon the advice of counsel in instituting criminal proceedings against appellee, James Kenneth Fowler (Fowler), after first relating all material facts to counsel, Fowler has failed to establish a lack of probable cause for the action of Gladding Chevrolet.

Gladding Chevrolet, as its name implies, is a new car dealer. It has facilities on Ritchie Highway in the Glen Burnie area of Anne Arundel County. It maintains a service and repair department with a rather large spare parts inventory. For quite some time prior to the incident in this case it had experienced the unexplained disappearance of substantial quantities of parts from its inventory. In fact, its president, Harry L. Gladding (Gladding), testified that at the end of 1967 there was a shortage of approximately $55,000 in the inventory in this department. After consultation with counsel, he, on behalf of the corporation, then retained the services of Inter-State Detective Agency, Inc. (Inter-State), a private detective firm. Inter-State assigned an undercover agent, John Richard Chaney, Jr. (Chaney), to pose as a stock clerk in the parts department in an effort to locate the source of the losses. Chaney submitted daily written reports to Inter-State, which ultimately were typed and forwarded to Gladding. After Chaney had been

---

1. Gladding Chevrolet states in its brief that the judgment was for $6,000 as compensatory damages and $9,000 as punitive damages. The docket entries reflect no apportionment of damages. We have not been supplied with a transcript of the jury's return of the verdict. Fowler's brief is silent upon the subject.

on the job something over two and a half months he submitted a report in which he indicated that Fowler was directly involved, reciting an instance in which Fowler had put parts in Chaney's truck, told him that they were to be taken to a man, and told him "not to worry about the bill." Gladding took no action against Fowler, but directed Chaney in the future to obtain more precise information as to order number, part number, Gladding Chevrolet's cost, selling price, and where the parts were delivered.

Chaney's observations were rewarded as reflected in his report of July 1, received by Gladding on July 3. That report stated:

> "I reported for work at 4:00 P.M. I started putting away some stock. * * * I worked with Jim Fowler tonight again and I had to take some parts out tonight on the truck. Jim gave me a bill just in case someone stopped me on the way over there. I brought the bill back to him when I returned. I was sent to Allen's Auto Shop on Cross Street and Washington Boulevard. I took one Engine Block and two Cylinder Heads over there. When I came back, I stopped to get Something for Jim to eat. I did this because Jim had told everyone that asked for me that I was getting him something to eat and that he didn't know what was taking me so long to return. He told them that the restaurant must be busy.
>
> "I was told to tell anyone that saw me over in that area of town that I went home to see how my wife was because she was sick and that I had been worrying about her that night. If no one had seen me, I was just supposed to say that I went out to get Jim something to eat and that they were very busy at the time.
>
> "The following is the list of merchandise which I delivered: One Engine Block, stock no.

3937294, list price $346.75, his amount $251.39, our cost $225.39.

"Two cylinder heads—stock no. 3928455, list price $107.90, his amount $80.92, our cost $64.24.

"The total price was $332.31. The invoice was made out to Allens Auto Service. Note that I brought this bill back to Jim Fowler. The evidence points to him most definitely. I left work at 12:00 Midnight."

Upon receipt of this report Gladding questioned Chaney as to whether all the information was true. He was advised that it was. He was further advised that subsequent to the writing of the report Fowler gave Chaney $10 "for what [Fowler] owed [Chaney] for what [Chaney] did for him on the 1st of July."

Gladding talked with Chaney's supervisor at Inter-State and arranged for a meeting on July 8. On that occasion Gladding met with the supervisor, Chaney, Officer Romine of the Anne Arundel County Police Department (a friend of Gladding), his parts manager, and his assistant office manager. The parts manager was the only individual in the organization who knew of Chaney's true identity. The office manager, at Gladding's direction, checked company records to ascertain whether the parts mentioned by Chaney had been received from General Motors. She reported that the records disclosed that they had. The parts manager was directed to ascertain whether there was a record of those parts having been sold. He reported no record of sale and that they should be in stock. Gladding then directed that a physical inventory be made to ascertain if the parts were in fact in stock. The parts manager reported that inventory was made and the parts were not in stock. The assistant office manager was directed to ascertain whether there was a charge account in the name of Allen's Auto Parts. She reported that she found no record of such an account. Detective Romine suggested that Gladding talk to his attorney, which he did.

Although the competence of Gladding Chevrolet's attorney has not been attacked, it should be noted that "[e]xcept for the war years" he has been engaged in the general practice of law since 1935. Although no longer handling criminal cases, he "did a great deal of criminal work for many years" and was a former trial magistrate. He had represented Gladding "approximately since he started business."

Gladding was asked what information he gave his attorney. He replied:

"The exact information I have given you, I had a report from Mr. Chaney, we checked our files, and we looked at our books to prove we had bought it and we had it one time and could not find it now, and he asked if we had a sales slip to show it was sold and I told him we did not."

He was advised to have a warrant sworn out for Fowler for larceny after trust.

The attorney's version of what he was told by Gladding is as follows:

"Q. What did Mr. Gladding say to you in that telephone conversation? A. He told me that he had a man by the name of Chaney who was working in the stock room, parts, he had employed the Interstate Detective Agency and that its supervisor was then in the office, that an incident occurred wherein a man by the name of Fowler had instructed this man Chaney to take, I think it was a block and several heads, to an outfit on the Washington Boulevard with whom they did no business, had no account set up, and that this item was allegedly supposed to have been delivered there. He also told me that several days after this delivery that Chaney had reported to him, or to his supervisor, that Fowler gave him a ten dollar bill for working on this deal with him and thanked him for his

doing so. He was also—Chaney also was instructed by Fowler to tell anyone if he was caught to make sure that he had an excuse that his wife was sick, that was why he was away from the shop. Mr. Gladding asked me what to do. I said, are you sure of your ground.

\* \* \*

"Q. What other information did you receive from Mr. Gladding regarding the subject matter of this incident? A. Well, Mr. Gladding told me in the telephone conversation, that upon receipt of this information he immediately instructed Millie Archibald, who is one of the ladies that work there and is seated right down there, and Mr. Hubert Kowalewski who was then in charge, I believe, of the parts department, to check the inventory and they found out these items were not there in the inventory. Also, Mr. Fowler told Mr. Chaney that under no circumstances are you to take those delivery tickets and give them to anyone except me when you come back. Return them directly to me.

"Q. All right, sir, now upon receipt of this information from Mr. Gladding, what legal advice, if any, did you give him? A. Well, I told him to do two things, number one, to obtain a warrant for larceny after trust, and also told him to discharge him.

"Q. You are referring, of course—A. To Fowler.

"Q. You refer to obtaining a warrant for larceny after trust against Mr. Fowler? A. Correct."

Fowler was charged with larceny after trust upon the oath and information of Gladding Chevrolet's manager. A preliminary hearing was held by a trial magistrate who held him for the further action of the grand jury of Anne Arundel County. That body returned an indictment.

At the subsequent trial the court directed a judgment of acquittal on three counts of the indictment. A not guilty verdict was returned by the jury on the remaining two, larceny after trust and embezzlement, thus making possible this litigation.

Gladding Chevrolet raises a number of points on appeal, but we shall consider only its contention that the trial court erred in failing to direct a verdict in favor of Gladding Chevrolet because the evidence establishes as a matter of law that Gladding Chevrolet had probable cause for instituting the criminal proceedings, since that point is dispositive of the case.

A summary of the requisites for a suit for malicious prosecution was set forth for the Court by Judge (now Chief Judge) Hammond in *Banks v. Montgomery Ward & Co.,* 212 Md. 31, 128 A. 2d 600 (1957):

> "To prevail in a suit for malicious prosecution the plaintiff must show: (1) that the criminal proceeding instituted or abetted by the defendant has terminated in his favor, apart from whether any inference as to probable cause for the proceeding arises from the termination; (2) a want of probable cause for the proceeding which may, or may not, be inferred from the termination of the proceeding, depending upon the manner of the termination; (3) malice, which is a primary purpose for the institution of the proceeding, other than that of bringing an offender to justice. *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 173, *supra,* and authorities cited." *Id.* at 38.

On the issue of probable cause it is said in *Banks:*

> "Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty. *Johns v. Marsh,* 52 Md. 323, 335; *Nance v. Gall,*

187 Md. 656, 669. Mere belief, however sincere, is not sufficient. There must be such grounds of belief founded upon actual knowledge of facts as would influence the mind.of a reasonable person. *Pessagno v. Keyes,* 143 Md. 437." *Id.* at 39.

On the same issue Judge Delaplaine said for the Court in *Kennedy v. Crouch,* 191 Md. 580, 62 A. 2d 582 (1948) :

"Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the person accused is guilty of the offense with which he is charged. *Nance v. Gall,* 187 Md. 656, 669, 50 A. 2d 120, 126. What facts are sufficient to show want of probable cause in any case is, of course, a question of law for the court; but whether such facts are proved by the evidence is a question for the jury. *Cooper v. Utterbach,* 37 Md. 282, 317; *Campbell v. Baltimore & Ohio R. Co.,* 97 Md. 341, 344, 55 A. 532; *Stansbury v. Luttrell,* 152 Md. 553, 556, 137 A. 339; *Stewart v. Sonneborn,* 98 U. S. 187, 25 L. Ed. 116, 119. If the facts relied on to constitute probable cause, or the inferences to be drawn therefrom, are clear and undisputed, the question is one of law for the court; but if the evidence or inferences to be drawn therefrom are disputed, it becomes a mixed question of law and fact. *Nance v. Gall,* 187 Md. 656, 669, 50 A. 2d 120, 126." *Id.* at 590-91.

In that case he also said:

"Proof that he placed the facts fully and fairly before his counsel and acted upon his advice is a good defense to the charge of want of probable cause. *Cooper v. Utterbach,* 37 Md. 282, 315 [(1873)] ; *Stewart v. Sonneborn,* 98 U. S. 187, 25 L. Ed. 116, 120 [(1879)]." *Id.* at 587.

*Stewart* involved prosecution of civil process. It stated, however:

> "It was proved that, before they commenced their suit in the Circuit Court of Barbour County, the defendants were advised by an eminent lawyer of Alabama, of twenty-five years' standing in the profession, respecting their legal right to recover the debt from the plaintiff, that, in his opinion, the plaintiff was liable therefor. It was further testified that the same lawyer advised them that, in his opinion, the plaintiff had rendered himself liable to involuntary bankruptcy proceedings by suffering his brother's judgment to go against him by default, and by advertising his entire stock of goods at and below New York cost. It was not until after this advice had been given that the petition in bankruptcy was prepared and filed.
>
> "That the facts stated in the point proposed, if believed by the jury, were a perfect defence to the action; that they constituted in law a probable cause, and being such, that malice alone, if there was such, was insufficient to entitle the plaintiff to recover,—is, in view of the decisions, beyond doubt. *Snow v. Allen,* 1 Stark. 502; *Ravenga v. Macintosh,* 2 Barn. & Cress. 693; *Walter v. Sample,* 25 Pa. St. 275; *Cooper v. Utterbach,* 37 Md. 282; *Olmstead v. Partridge,* 16 Gray (Mass.), 381. These cases, and many others that might be cited, show that if the defendants in such a case as this acted *bona fide* upon legal advice, their defence is perfect." *Id.* at 196-97.

To the list of such holdings can be added our own *Hooper v. Vernon,* 74 Md. 136, 143, 21 A. 556 (1891). A corollary of this rule is that there must be no material fact concealed from the attorney. *Hyde v. Greuch,* 62 Md. 577 (1884).

"If the facts or inferences drawable from the 'probable cause' that motivated a criminal charge are clear and undisputed, the question is one of law for the court, but if such facts or inferences are disputed, it is a question of fact for the jury." *W. T. Grant Co. v. Guercio,* 249 Md. 181, 187, 238 A. 2d 855 (1968).

There is no actual dispute relative to the facts here. Although Fowler has alleged that there are things which hindsight would have dictated that Gladding do, and although Fowler has suggested in his brief and in his argument before us that Gladding did not convey all of the material facts to his attorney, Fowler has not pointed to any material fact which was not communicated by Gladding to his attorney, nor do we note any substantial omission or failure to act by Gladding Chevrolet.

We note in passing that although in this case we are not obliged to decide the effect of the grand jury indictment, the majority rule is that such indictment is prima facie evidence of probable cause. *See* 52 Am. Jur. 2d *Malicious Prosecution* § 177 (1970); 54 C.J.S. *Malicious Prosecution* § 35 (1948); *Restatement of Torts,* § 664 (1938); and Annotation *Malicious Prosecution: Effect of Grand Jury Indictment on Issue of Probable Cause,* 28 A.L.R.3d 748, 753 (1969). In fact, the *Restatement* states:

"§ 664. EFFECT OF THE ACTION OF A GRAND JURY.

"(1) * * *

"(2) The indictment of the accused by a grand jury, if unexplained, is evidence that the person who initiated the proceedings had probable cause therefor.

*"Comment:*

a. The action of a grand jury in finding a true bill against the accused or refusing so to find, has the same effect as evidence of the existence or nonexistence of probable cause as the action of a magistrate in committing or dis-

charging the accused (see § 663). The phrase 'if unexplained' in the rule stated in this Section refers to grounds of the same general nature as those there stated."

It also says:

"§ 663. EFFECT OF DISCHARGE OR COMMITMENT BY A MAGISTRATE.

"(1) * * *

"(2) The magistrate's commitment of the accused is evidence that the person initiating the proceedings had probable cause."

By way of comment it states:

*"Comment on Subsection* (2):

* * *

"h. In determining what, if any, weight should be given to the commitment by a magistrate, the court should take into account evidence that the commitment was due to the misconduct of the magistrate or was procured by false testimony offered by the prosecutor or given in his behalf."

We rest this case upon the previous holding of this Court that in a malicious prosecution case a valid defense to a contention of lack of probable cause is that the prosecutor, in a proper case, acted upon advice of counsel. For purposes of determining whether Gladding properly acted upon the advice of counsel, it is not necessary to determine whether Chaney correctly and properly reported what he saw and heard. There is no evidence to indicate that Gladding was not justified in relying upon what Chaney reported to him. Therefore, the essential, material fact for determination is what Chaney reported to Gladding. There is no dispute upon that subject, nor is there any dispute as to what Gladding told counsel. Accordingly, we hold that since Gladding proceeded upon advice of counsel after first communicating

510

to him all material facts as he knew them, it was error to permit the jury to consider that issue. Gladding Chevrolet's motion for directed verdict should have been granted.

*Judgment reversed; appellee to pay the costs.*