### Donald JACOBS, et al., Plaintiffs

v.

### STATE OF MARYLAND DEPARTMENT OF NATURAL RESOURCES, et al., Defendants.

#### No. CIV. H–02–1450.

United States District Court, D. Maryland.

May 31, 2002.

---

not refer to motions to admonish opposing counsel.

Alan Hilliard Legum, Joel L. Katz, Law Office, Annapolis, MD, for Plaintiffs.

Joseph P. Gill, Office of the Attorney General Department of Natural Resources, Annapolis, MD, J. Joseph Curran, III, Adelberg Rudow Dorf and Hendler LLC, Baltimore, MD, for Defendants.

### MEMORANDUM AND ORDER

Plaintiffs Donald and Norma Jacobs are husband and wife and reside in the City of Baltimore. In this civil action, plaintiffs have sued the State of Maryland Department of Natural Resources ("DNR"), John W. Rhoads ("Rhoads") and Michael G. Sewell ("Sewell"). Plaintiffs' complaint was originally filed in the Circuit Court for Baltimore City. Subsequently, the case was removed to this Court by defendants Rhoads and Sewell pursuant to 28 U.S.C. § 1441, *et seq.*

There are eight counts in the complaint, only one of which has been brought under federal law. In removing the case to this Court, defendants Rhoads and Sewell assert that federal question jurisdiction exists under 28 U.S.C. § 1331 as a result of the existence of the one federal claim alleged in the complaint. Count One seeks a recovery for malicious prosecution while Counts Two and Three assert claims of false arrest and false imprisonment. Count Four seeks a recovery for defamation, and Count Six alleges a violation of Article 24 of the Maryland Declaration of Rights. Count Seven asserts a claim under 42 U.S.C. § 1983.[1] All three of the

---

1. Counts Five and Eight are not separate substantive causes of action but seek damages or attorneys' fees based on claims asserted in other Counts. Count Five seeks a recovery of damages by the plaintiffs jointly for loss of consortium, and Count Eight seeks attorneys' fees pursuant to 42 U.S.C. § 1988.

defendants have been sued in all of the counts of the complaint. Substantial compensatory and punitive damages are sought by the plaintiffs.

Responding to the Court's Standing Order Concerning Removal, plaintiffs have filed an Opposition to Removal. Defendants Rhoads and Sewell have filed a response and a supplemental response to that Opposition. Also pending in the case is the motion of defendant DNR to dismiss all claims asserted against it in this case and the motion of defendants Rhoads and Sewell to dismiss Count Four of the complaint. Plaintiffs have filed an opposition to the motion to dismiss of defendant DNR but have not opposed the motion to dismiss Count Four of defendants Rhoads and Sewell.[2] More recently, defendant DNR has filed a reply memorandum in support of its motion to dismiss the complaint.

Following its review of the pleadings and memoranda, this Court has concluded that no hearing is necessary for a decision on the pending disputed issues. *See* Local Rule 105.6. For the reasons stated herein, plaintiffs' opposition to the removal of this case to this Court will be overruled, the motion to dismiss of defendant DNR will be granted, and the motion to dismiss Count Four of defendants Rhoads and Sewell will also be granted.

I

*Background Facts*

The complaint is 17 pages in length and contains 99 paragraphs. Paragraphs 11 through 48 set forth in some detail the occurrences which led to the claims asserted by the plaintiffs in this case against the defendants. As alleged in the complaint, the background facts are as follows.

Plaintiff Donald Jacobs ("Jacobs") has been employed by the DNR as an Officer First Class member of the Maryland Natural Resources Police ("NRP"). At the time of the matters in suit, Jacobs was cross designated as a Task Force Officer with the United States Drug Enforcement Administration ("DEA"), and was assigned to the Baltimore Washington High Intensity Drug Trafficking Area ("HIDTA"). Defendant Rhoads is employed by the State of Maryland as Superintendent of the NRP, and he oversees and directs the affairs and operations of the NRP. Rhoads also supervises officers' conduct, training and discipline and has the authority to punish and remove officers. Defendant Sewell is also employed with the NRP as the NRP Special Operations Commander, and he is responsible for investigating disciplinary complaints filed against NRP personnel.

On April 10, 1999, Jacobs and Detective Frank Wendolek ("Wendolek"), a Maryland Transportation Authority ("MDTA") police officer working with the HIDTA, were assigned by the DEA Task Force to respond to a drug arrest at the Fort McHenry Tunnel. The arrest included the seizure of suspected cocaine, U.S. currency and a handgun. Upon his arrival at the Fort McHenry Tunnel Headquarters of the MDTA where the suspect was being held, Jacobs was taken into a conference room where a Sergeant Vasquez of the MDTA police force was handling in an unsecured room the currency which had been seized and which was stacked on the conference room table. Various personnel were left alone in the room at times, and different persons came in and out of the room several times prior to Jacobs' arrival.

While at the headquarters, Jacobs was met by Wendolek who assisted him in

---

**2.** Both the motion to dismiss of defendant DNR and plaintiffs' opposition to that motion were filed while the case was pending in the Circuit Court for Baltimore City.

interviewing the suspect, in conducting a preliminary records check and in securing the seized currency in an evidence bag. The evidence bag could not be sealed at that time because the MDTA did not have the proper equipment. Jacobs and Wendolek were then given custody of the seized currency by the MDTA, and Wendolek signed a receipt indicating that he did not count the money or verify the amount. The currency had been counted by the MDTA but was not counted by Jacobs or Wendolek pursuant to a DEA policy. Jacobs and Wendolek then left the MDTA headquarters in separate vehicles. They had agreed to meet at DEA headquarters in Baltimore to place the currency in a safe after sealing the evidence bag. The currency was transported in Wendolek's vehicle.

On April 12, 1999, Wendolek removed the currency from the DEA safe and took it to a bank in Jessup, Maryland for deposit. Upon arrival, it was counted by a teller, and it was discovered that there was a two hundred dollar difference between the currency inside the bag and what was reported in the property record that had been completed by the MDTA police.

As a result of the discrepancy, MDTA and NRP initiated an investigation into the possible theft of the currency by law enforcement personnel. Defendant Sewell was assigned to investigate the alleged theft on behalf of the NRP together with Lieutenant Sue Scanland ("Scanland") of the MDTA. All personnel involved in the arrest in question and in the seizure of the currency were considered by the investigators to be suspects in the theft, including Jacobs. During the investigation, Sewell and Scanland conducted interrogations and administered polygraph tests to suspected NRP and MDTA personnel, including Jacobs. Jacobs, on the advice of his attorney was administered an independent poly-

graph test. Sewell was informed of the independent test but refused to consider the results. On April 30, 1999, Jacobs was informed that at the direction of Rhoads the investigation was being then conducted as a criminal investigation instead of an internal one. Jacobs was, at this time, relieved of his duties with the HIDTA Team and was administratively assigned to NRP headquarters.

On or about June 9, 1999, Sewell prepared and completed a report which concluded that Jacobs was the one who stole the missing currency. The report stated that Jacobs was the only person alone with the currency and that he thus had the opportunity to take it. According to Jacobs, this statement was false. On August 23, 1999, the Attorney General of Maryland filed charges against Jacobs. On September 7, 1999, Jacobs was arrested and was criminally charged with misconduct in office, obstruction of justice, and theft under $300. He was also relieved of his police powers and suspended with pay pending further review.

On October 21, 1999, a report was prepared, appraising Jacobs' performance from January 1, 1999 through June 30, 1999 and rating him "exceptional" in all categories. However, unknown to Jacobs, defendant Sewell had attached to the report on October 8, 1999, a memorandum which modified his ratings to "needs improvement" in all categories, based solely upon the alleged theft. Jacobs was not made aware of this modification until February 28, 2000, when it was provided to him for use in his defense of the criminal charges then pending.

On November 15, 1999, there was an account of the charges pending against Jacobs which appeared on television during a local news show. An article similarly discussing the charges appeared in a local newspaper on November 16, 1999. Both

of these reports allegedly contained false and disparaging information about Jacobs. According to the complaint, these stories were based on information supplied by the defendants.

On February 29, 2000, the criminal charges against Jacobs were tried in the Circuit Court for Baltimore City before Judge Kenneth Johnson, sitting without a jury. On March 1, 2000, Jacobs was found not guilty of all charges by Judge Johnson. After his acquittal, Jacobs filed an administrative complaint, alleging wrongful conduct by Sewell in the performance of the investigation undertaken by him.

Jacobs alleged in that complaint that Sewell's investigation of him was biased in that it failed to follow up on all leads in the investigation and failed to derive logical inferences resulting from interviews of witnesses. NRP later undertook an investigation into the allegations of Jacobs' administrative complaint, and on May 21, 2001, Jacobs was informed that NRP had cleared Sewell of any and all wrongdoing.

On June 4, 2001, Jacobs met personally with Rhoads and informed him of the allegedly biased nature of the investigation. Jacobs asked Rhoads to negate the findings made by Sewell during his investigation arguing that they were flawed and did not follow a logical and just conclusion. After personally reviewing the documents generated by Sewell's investigation, Rhoads decided to allow Sewell's findings and conclusions to stand.

On December 14, 2000, Jacobs sent a letter to the Maryland State Treasurer, giving notice of the claim being asserted by him against the NRP under the Maryland Tort Claims Act.[3] This civil action was filed in the Circuit Court for Baltimore City in February, 2002.

## II

### *Removal*

On April 22, 2002, defendants Rhoads and Sewell filed in this Court their Notice of Removal. Pursuant to 28 U.S.C. § 1446(b), the notice of removal of a civil action "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based..."

In their Opposition to Removal, plaintiffs contend that the Notice of Removal of defendants Rhoads and Sewell was untimely. Plaintiffs note that Assistant Attorney General Joseph P. Gill ("AAG Gill") represents all three of the defendants named in this case. Defendant DNR was served with process on February 7, 2002. By letter dated March 14, 2002 to Alan H. Legum, Esq., plaintiffs' attorney, AAG Gill indicated that he would be representing defendants Rhoads and Sewell and that although a copy of the summons and complaint for each of these two defendants had been left at or mailed to the DNR, neither defendant had been properly served with process. According to plaintiffs, the thirty day period set forth in § 1446(b) began to run on March 14, 2002, when counsel for Rhoads and Sewell acknowledged that copies of the summons and complaint had been mailed to them at the DNR. Plaintiffs contend that the Notice of Removal was therefore untimely filed in this Court on April 22, 2002.

The record here does not support plaintiffs' argument. In his letter of March 14, 2002, AAG Gill clearly stated that defendants Rhoads and Sewell had not been properly served with process in the case. Plaintiffs' attorney confirmed that no prop-

---

**3.** A copy of that letter has been attached as an exhibit to the complaint.

er service had been effected on these defendants by way of a letter from his office to AAG Gill dated March 19, 2002, stating:

Pursuant to our telephone conversation yesterday, please find enclosed the Complaint in the above matter. This will confirm that you will accept service for John Rhoades [sic] and Michael Sewell.

This letter was not received by AAG Gill until March 21, 2002. Since April 20, 2002, which was thirty days after such receipt, fell on a Saturday, the thirty-day period under § 1446(b) did not expire until April 22. Under Rule 6(a), F.R.Civ.P., the last day of a period of time prescribed by an applicable statute is not included if it is a Saturday or a Sunday, in which event the period runs until the end of the next day, which was not one of those aforementioned days. The next day which was not a Saturday or Sunday was therefore Monday, April 22, 2002.

Under the circumstances here, this Court concludes that the Notice of Removal of defendants Rhoads and Sewell was timely filed in this Court on April 22, 2002. Accordingly, there is no merit to plaintiffs' Opposition to Removal, which will be overruled. This case will therefore not be remanded to the Circuit Court for Baltimore City but will go forward in this Court.

## III

*Motion to Dismiss of Defendant DNR*

In its motion to dismiss, defendant DNR asserts that none of the eight counts which have been brought against it state a claim upon which relief can be granted. In their opposition to DNR's motion to dismiss, plaintiffs do not oppose dismissal of Counts Two, Three, Four and Seven. However, they argue that they should be permitted to go forward with Counts One and Six and should also be allowed to seek damages for loss of consortium as claimed in Count Five.

Count Two seeks a recovery for false arrest; Count Three asserts a claim of false imprisonment and Count Four seeks a recovery for defamation. All three of these claims are barred by the Maryland Tort Claims Act. A suit may not be brought against the State of Maryland or one of its agencies unless the plaintiff "submits a written claim to the Treasurer or a designee of the Treasurer within one year after the injury to person or property that is the basis of the claim; ..." Md. Code Ann., State Gov't. § 12–106(b). The alleged false arrest and false imprisonment occurred on September 7, 1999 and the alleged defamatory statements were published on November 15 and 16, 1999. Since Jacobs did not submit his claim to the State Treasurer until December 14, 2000, more than one year after his causes of action accrued, his claims against the DNR for false arrest, false imprisonment and defamation are barred by his failure to comply with the Maryland Tort Claims Act.[4] Accordingly, Counts Two, Three and Four will be dismissed.

Count Seven asserts a claim against the DNR under 42 U.S.C. § 1983, and Count Eight seeks attorneys' fees under 42 U.S.C. § 1988. However, it is well established that neither a state nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Accordingly, plaintiff Jacobs is not entitled to assert in this case a claim against the DNR under § 1983 nor is he entitled to recover attorneys' fees under § 1988.

4. Plaintiffs' defamation claim against defendant DNR is also barred by the one year limitations period in § 5–105, Md.Code Ann., Cts. & Jud. Proc.

Counts Seven and Eight will therefore also be dismissed.

■ Count One presents a claim of malicious prosecution. Relying on *Gladding Chevrolet, Inc. v. Fowler*, 264 Md. 499, 287 A.2d 280 (1972), defendant DNR contends that Count One should be dismissed because reliance upon advice of counsel in instigating a criminal prosecution is an absolute defense to a malicious prosecution action. As alleged in the complaint and as noted in the attached Exhibit 1, the Attorney General's Office conducted the investigation of Jacobs, prosecuted him and filed charges against him. Defendant DNR accordingly argues that its reliance upon advice received from the Attorney General entitles it to absolute immunity from a claim of malicious prosecution. On the record here, this Court would agree.

In opposing the DNR's motion to dismiss Count One, plaintiffs concede that a defendant in a malicious prosecution case has a defense to that claim if it acted upon legal advice. Plaintiffs argue, however, that the actions taken by DNR in this case were not *bona fide* because false statements were made to the Office of the Attorney General. There is no merit to this contention.

On the record here, this Court concludes that defendant DNR is entitled to absolute immunity as to the claim of malicious prosecution brought by plaintiffs against it. It is not alleged in the complaint that the DNR knowingly passed along false information to the Office of the Attorney General. Although it is alleged that Sewell prepared a report containing false information, it is not alleged that the DNR was not justified in relying upon what Sewell reported to it. For purposes of determining whether a defendant had properly acted upon the advice of counsel, it is not necessary to determine whether an investigator correctly and properly reported what he saw and heard. *Gladding*, 264 Md. at 509, 287 A.2d 280. The material fact in a case of this sort is whether what was reported to the defendant supported probable cause. *Id.* Since Sewell prepared the report which was relied upon by the DNR in bringing the criminal charges and since there is no allegation or indication that the DNR was not justified in relying on this report, plaintiffs' claim of malicious prosecution must fail. Count One will therefore be dismissed.

■ In seeking to dismiss Count Six of the complaint, defendant DNR once again relies on the Maryland Tort Claims Act.[5] According to defendant DNR, if Jacobs was deprived of his liberty as prohibited by Article 24 of the Maryland Declaration of Rights, the deprivation in question occurred on September 7, 1999, the date of his arrest. Defendant DNR accordingly argues that Jacobs was required to submit his claim to the State Treasurer on or before September 6, 2000. Since Jacobs' claim was not submitted until December 14, 2000, defendant DNR asserts that the cause of action alleged in Count Six of the complaint is barred by sovereign immunity.

In opposing DNR's motion to dismiss Count Six, plaintiffs argue that the constitutional violation continued until March 1, 2000, when Jacobs was acquitted of the criminal charges brought against him. There is no merit to this contention. The criminal prosecution of Jacobs was based on the report prepared by Sewell which allegedly contained misstatements. Relying on this report, the Attorney General of

---

5. The parties agree that the Maryland Tort Claims Act applies to constitutional torts as well as to other torts.

Maryland filed charges against Jacobs in August of 1999, and on September 7, 1999 Jacobs was arrested and charged with criminal misconduct. Any violation of Jacobs' constitutional rights under Article 24 therefore occurred on the September 7, 1999 date, and Jacobs was therefore required by the Maryland Tort Claims Act to submit his claim to the Treasurer on or before September 6, 2000. Since no such claim was timely filed, Count One of the complaint must also be dismissed.

Inasmuch as all of the other claims brought against defendant DNR are being dismissed, Count Five is also subject to dismissal. Plaintiffs' claim for loss of consortium under Count Five is based upon their alleged right to a recovery against defendant DNR under one or more other counts of the complaint. Since none of these other counts are viable, Count Five must also be dismissed.

## IV

### Motion to Dismiss Count Four Of Defendants Rhoads and Sewell

Count Four of the complaint asserts a claim for defamation against defendants Rhoads and Sewell as well as against defendant DNR. In their motion to dismiss that Count, defendants Rhoads and Sewell contend that plaintiffs' claim of defamation is barred by limitations. Plaintiffs have not filed an opposition to this motion.

The alleged defamatory statements were made on November 15 and 16, 1999. Pursuant to Md.Code Ann., Cts. & Jud. Proc. § 5–105, an action for libel or slander must be filed within one year from the date it accrues. Since this suit was not filed in the Circuit Court for Baltimore City until February 1, 2002, the claim in question is clearly barred by limitations.

Accordingly, the motion of defendants Rhoads and Sewell to dismiss Count Four of the complaint will be granted.

## V

### Conclusion

For all the reasons stated, this Court has determined that this case was properly removed to this Court by defendants Rhoads and Sewell pursuant to 28 U.S.C. § 1441. The motion to dismiss of defendant DNR will be granted in its entirety, and the motion to dismiss Count Four of defendants Rhoads and Sewell will also be granted. Remaining in this case are the claims asserted by plaintiff Jacobs against defendants Rhoads and Sewell in Counts One, Two, Three, Six, Seven and Eight, and the joint claim asserted by plaintiffs against these defendants in Count Five. Since defendants Rhoads and Sewell have now filed an answer to the complaint, a Scheduling Order will be entered by the Court.

Accordingly, it is this _____ day of May, 2002 by the United States District Court for the District of Maryland,

ORDERED:

1. That plaintiffs' Opposition to Removal is hereby overruled;

2. That the motion to dismiss of defendant State of Maryland Department of Natural Resources is hereby granted;

3. That State of Maryland Department of Natural Resources is hereby dismissed as a defendant in this case; and

4. That the motion to dismiss Count Four of the complaint of defendants John W. Rhoads and Michael G. Sewell is hereby granted.