A. KNAPP v. THE CHICAGO, BURLINGTON & QUINCY RAIL-
ROAD COMPANY AND J. M. HARRISON, Appellants.

Malicious Prosecution: WANT OF PROBABLE CAUSE:  *Directed verdict.*
A detective was employed by a railroad company to discover
who had stolen a belt belonging to the company and took sev-
eral employes of the company to see a belt which plaintiff was
using at his stone quarry.  The employes recognized the belt
as one stolen, by certain holes which they cut in it.  On in-
quiry at the police station, defendant was informed that one of
plaintiff's sons was a suspicious character and had served a
term in state's prison for larceny.  Plaintiff, on being con-
fronted with the crime, claimed at first that he had bought
the belt, but soon offered to settle by paying for it, but through
failure to agree upon a price the settlement failed, and on the
advice of an attorney, the railroad company began a criminal
prosecution against plaintiff.  *Held,* that it had such probable
cause for commencing its criminal proceedings as authorized

directing a verdict in its favor, in an action for malicious prosecution.

*Appeal from Wapello District Court.*—HON. M. A. ROBERTS, Judge.

FRIDAY, APRIL 12, 1901.

A four-ply belt, 7 inches wide and 47 feet long, owned and used by the Chicago, Burlington & Quincy Railway in sawing wood near its roundhouse at Ottumwa, was stolen June 8, 1898, and the defendant Harrison was·detailed by said company to ascertain the guilty parties. On the eighteenth of July following, he filed a preliminary information accusing the plaintiff and his son Louis of the crime, and at the same time sued out a search warrant for the belt, which was supposed to be the one in use at plaintiff's stone quarry. On hearing, it was found the belt was in value less than $20, and the accused were discharged. Thereupon an information was signed by Harrison and filed, in which the same offense was alleged; the value of the property being correctly stated. Change of venue was taken, a trial had, and the defendants therein again discharged. In this action plaintiff charges that the proceedings mentioned were with malice and without probable cause. The jury so found, and from judgment awarding damages the defendants·appeal.—*Reversed.*

*McNett & Tisdale* for appellants.

*C. C. Leech* and *Jaques & Jaques* for appellee.

LADD, J.—The railroad company is responsible in no other respect than as employer of Harrison. The latter had no acquaintance whatever with the plaintiff or any member of his family prior to the eighteenth day of July, 1898—the day the preliminary information was filed and the search warrant sued out. But he had previously talked with members of the police force, and had been advised that

one of plaintiff's sons was a suspicious character, and had
been convicted of larceny and served a term in the peni-
tentiary; and also by Noah, whose beat included his resi-
dence, that plaintiff had complained to him of the need of
a belt to use in his quarry, being short of money to buy one
and he (Noah) had suggested that the company's belt would
be found there.   On that day he had gone, with several em-
ployes of the company, who had used the belt in contro-
versy in sawing, to plaintiff's stone quarry, and together
they had examined that on plaintiff's engine and pump.
These men had positively identified the belt as that of the
company—even pointing out identification marks.   The belt
had been cut down at one side, and buckets attached.   Up-
on his return from one trip to the quarry he met plaintiff,
who declared the belt was his, and that he had bought it of
Harper-McIntyre Company, but immediately, upon Har-
rison's assertion that it was owned by the company, plain-
tiff offered to pay what it was worth for it, rather than have
any trouble.   As Harrison estimated its value at $34, and
Knapp thought its cost not more than $16 or $17, there was
no settlement.   This was the information upon which Har-
rison acted, and which he laid before reputable counsel,
who advised the prosecution.   Were the facts and circum-
stances such as to warrant him, as an ordinarily cautious
and prudent man, in the belief of defendant's guilt?   That a
seven-inch, four-ply belt of the railroad company was stolen,
cannot be doubted.   One employe had purposely marked it
by scratching a cross with a file, and the holes through which
to draw the whang strings had been cut instead of punched.
The belt on the pump had been cut off, and only part of
these holes appeared, but the cross was visible.   Five wit-
nesses insisted that it was the company's belt, and so testi-
fied on this trial.   It is said that another conclusion would
have been reached had a sample like the company's belt
been compared with that on the pump.   A sufficient an-
swer to this is that these witnesses found them the same.

Was the prosecutor bound to disbelieve them? Certainly not, unless the claim of ownership should have led him to make further inquiry. But that claim was repudiated almost as soon as made, by recognizing the company's title in offering to pay the value of the belt. Under such circumstances, Harrison was not bound to treat the claim of purchase from Harper-McIntyre Company as seriously made. Even if he had inquired of that company, the record disclosed no information he might have received; and, from the fact that plaintiff did not avail himself of the evidence of any of its employes on the trial, it may well be inferred none were able to confirm his story. Besides, neither the existence nor location of such a company is shown by the record. We think that the prosecutor had the right to conclude from the facts then within his knowledge that plaintiff was in possession of the stolen belt, and, as this was shortly after the theft, that the latter was the guily person. The recent possession of stolen property clearly amounts to the probable cause. *McDonald v. Railway Co.*\* (Ariz.), 21 Pac. Rep. 338. True, an explanation is admissible, but the prosecutor is not bound to seek it unless the circumstances are such as t ocall for an investigation. No explanation was attempted, as plaintiff subsequently insisted that he was owner. Such cases must be determined on the situation as it was at the time, and not according to subsequent developments. If Harrison was reasonably diligent in ascertaining the facts, as he certainly was, then the sole question is, was he justified in believing plaintiff guilty at the time he began the prosecution? Ninety-nine men out of a hundred would have reached the same conclusion, and the attorney was warranted in giving the advice upon which Harrison acted. The rule generally recognized was thus stated in *Erb v. Insurance Co.*, 112 Iowa, 357: "What facts, and whether particular facts, constitute probable cause, is a question exclusively for the court." This case presents a state of facts calling for its application. We do not say plaintiff was guilty, for there

\*NOTE—Not officially reported.—*Reporter*.

is much in the record tending to show the con-
trary as to him; nor is this essential in order
to find defendants had probable cause. The innocent are
sometimes erroneously prosecuted, but if with probable
cause owing to the peculiar circumstances hedging them in,
they have no cause of action against the prosecutor. *Mc-
Gillvary v. Case*, 107 Iowa, 17, disposes of the appellee's.
contention with reference to the record. Because of the er-
ror in not directing a verdict for defendants, the judgment.
is REVERSED.