## MORRIS LASKY *vs.* ELIZABETH SMITH.

*Malicious prosecution; probable cause; possession of recently stolen property. Prayers; taking case from jury.*

In actions for malicious prosecutions the plaintiff must prove that the prosecution was both malicious and without probable cause. p. 374

Probable cause is such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the party accused to be guilty. p. 375

Possession of recently stolen property is evidence of probable cause, unless some reasonable explanation of the fact is given. p. 375

Proof of malice without proof of the want of probable cause is not sufficient. p. 376

The refusal to grant a prayer taking the case from the jury, at the close of the plaintiff's case, is not reversible error when the same prayer is granted at the end of the whole case. p. 372

*Decided April 5th, 1911.*

Appeal from the Court of Common Pleas of Baltimore City (HEUISLER, J.).

The cause was submitted to BOYD, C. J., PEARCE, THOMAS, PATTISON and URNER, JJ.

*Hyland P. Stewart* on the brief for the appellant.

*Harry B. Wolf* on the brief for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is a suit for malicious prosecution brought by the appellee against the appellant. The declaration charges that

the defendant falsely and maliciously, and without any rea-
sonable cause whatever, procured the arrest of the plaintiff
upon the charge of stealing certain household furniture, and
caused two police officers of the City of Baltimore to take
the plaintiff to the police station, where she was locked up
and searched, and then taken before a police justice by whom
she was committed for the action of the Criminal Court of
Baltimore City upon the charge of the defendant, and that
the plaintiff was tried by the Criminal Court of Baltimore
City and was acquitted and discharged. The verdict and
judgment being for the plaintiff, the defendant appealed.

The first exception was taken to the refusal of the Court
to take the case from the jury at the close of the plaintiff's
case.

The second, third, fourth and fifth exceptions were to rul-
ings upon the evidence, and the sixth to the ruling on the
prayers at the close of the whole case.

Police Justice Loden testified that the plaintiff was arrested
on July 21st, 1909, by Sergeant Hall and officer Swift,
charged with the larceny of one chair, one picture and a lot
of tools, the property of the defendant, who laid the charge;
that the plaintiff had a hearing before him that day, and
was released on bail for the action of the grand jury.

He testified that no warrant was issued in the case, and
that plaintiff was in custody when he reached the station
house. He said that frequently complaint is made to the
police department by some one other than the owner of the
alleged stolen property, and on that complaint the officer will
make the arrest, and the owner may not know of it until he
is notified to appear at the hearing, and if he then identifies
the property, his name is put in the complainants column.
He said that the defendant appeared as a witness in the
case, and there were five other witnesses.

Wm. S. Taylor, one of the clerks of the Criminal Court
produced all the papers in the case of *State* v. *The Plain-
tiff* but these are of no importance in this case except to show
that she was acquitted of the charge.

The plaintiff herself testified that up to July 20th, 1909, she lived with her husband in a house on Otterbein street belonging to the defendant, but moved on July 20th from that house to another in St. Peter street; that the defendant came to her on the day of her arrest, at the Otterbein street house, to demand rent and called her a thief; that he told her husband he was no man at all not to pay his rent; that when she was arrested the officer told her she must go, and the two officers and her husband went with her in the patrol wagon to the station house; that the defendant did not go to the station house with them, but was present when she was arresed, and was present at the hearing; that the defendant then charged her with taking a chair and some tools, but the charge was not true, and that after the hearing she was released on bail.

On cross-examination she said they rented their rooms in the Otterbein street house from Stazesky who occupied the lower floor; that their rooms were upstairs and were reached by outside steps on the side of the house on Iceland street, and they had nothing to do with the front entrance to the house; that Stazesky had moved away before they moved. She said the officers did not tell her when she was arrested what was the charge against her, and that she first learned what it was from the police justice when the hearing was had. She admitted that when she was arrested she went into her cellar and brought up a chair which she said she had bought from Stazesky, and that the officer took that chair to the station house. She said she never knew Samuel Nelson, a colored man who testified later in the case; and that she did not go in the front door of the Otterbein house on July 21st, 1909, and did not give any colored man a key to open that door that day.

Here the prayer was offered directing a verdict for the defendant, but as this prayer was renewed at the close of the whole case, the refusal to grant it at the close of the plaintiff's case is not open for review now. *Barabasz* v. *Kabat,* 91 Md. 53.

Stazesky testified that he moved from the Otterbein street house July 20th, 1909; that he sold the plaintiff at that time some coal and wood, but no chair, nor furniture of any kind; that he sold some furniture and tools to the defendant, and positively identified the chair then shown him as one he sold defendant; that he put all the articles he sold the defendant in the first floor front room and locked the door of that room, and also the front door, and gave both keys to the defendant.

Mrs. Reichert, who lived three doors from the Otterbein street house, testified that she knew the plaintiff and that about eight o'clock in the morning of July 21, 1909, she was sweeping her steps and saw Mrs. Smith with a key in her hand go to the house from which she had moved the day before and go in the front door, and that when she came out she had a chair and a basket covered with paper, and that she (the witness) informed Mr. Lasky the same morning what she had seen, and that she also told Mr. Lasky's colored man, Sam Nelson, the same morning.

Nelson testified that on the morning of July 21, 1909, Mrs. Reichert told him she had seen Mrs. Smith taking a chair away from the house; that he then went into Mr. Lasky's barroom and got two keys and went to the Otterbein street house to unlock the door, but could not get in; that Mrs. Smith came along at that time and he asked her if she had a key to that door, and she gave him a brass key, which he exhibited, and with which he unlocked the door, and looked in and told her a chair was gone, to which she made no reply; and that he then went to defendant and told him what he had heard and seen and gave him the brass key.

Officer Swift testified that he and Sergeant Hill investigated the charge upon the defendant's request, but they could not get in the plaintiff's house until her husband came about noon, though they saw a woman moving about in the house; that they told her of the complaint made and she began to cry and said she did not have the chair; that they told her if she had it it would be best to give it up, and her husband

told her the same, and after a private talk with him she went in the cellar, brought up the chair then exhibited and gave it to him, and said it had been given to her by a man in whose house they had lived.

Sergeant Hill testified to the same effect.

The defendant then testified that Mrs. Reichert about 9.30 on the morning of July 21st, 1909, communicated to him what she had testified to about seeing the plaintiff enter the Otterbein house that morning and bring out a chair and a basket, and that Nelson also reported to him what Mrs. Reichert had told him she had seen, and what he himself had seen, and that Nelson gave him the brass key, and he opened the door with it, and found a chair was missing and a set of tools; and that the chair she brought up from the cellar was one he had bought from Statzesky.

On cross-examination the defendant was shown a receipt written in a memorandum book produced by the plaintiff's husband, which read: "Received $7.00 from Mr. John Smith for rent from June 21st to July 21st, 1909—M. LASKY." The receipt bore no date, and Lasky said the rent was paid July 20th, the day the plaintiff moved.

The plaintiff's husband on rebuttal testified that when she was asked if she had the chair she said she had the chair, and that Mrs. Sutor had given it to her. He also said his wife did not go in the cellar and bring up the chair, but that he did, and said that the rent was paid on the 21st of July, after the arrest, and the receipt was signed about six o'clock in the evening.

This closed the testimony, and the prayer that there was no legally sufficient evidence of a want of probable cause for the prosecution mentioned in the declaration, and that the verdict must be for the defendant, was again offered and was refused.

In actions for malicious prosecution the plaintiff must prove that the prosecution was both malicious and without probable cause to entitle him to recover. "If it were mali-

cious, but if there was probable cause, the action can not be maintained." *Cecil* v. *Clarke,* 17 Md. 524.

The accepted definition of probable cause is, "such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the party accused to be guilty." *Boyd* v. *Cross,* 35 Md. 197.

Possession of recently stolen property is evidence of probable cause unless a reasonable explanation of such possession is given—26 *Cyc.* 37—and in this case the explanation given was immediately shown to be false. The facts communicated to the defendant by Mrs. Reichert and by Nelson, before the complaint was laid by the defendant, as was said by CHIEF JUSTICE SHAW in *Bacon* v. *Towne,* 4 Cush., "had a direct tendency to create a belief in the defendant's mind of the plaintiff's guilt of the offence charged." In the case mentioned the plaintiff was charged with arson, the defendant having been told by one Squires before the charge was made that two women told him that they had seen the plaintiff throwing cotton into the burned building, and told him to tell Towne. The trial Court refused to allow this testimony on the ground that it was hearsay, but the Supreme Court reversed for error in this ruling, JUDGE SHAW saying: "We think in the ordinary transactions of life men do not hesitate to act upon information until they put their informants upon oath, if indeed such oath would not be extrajudicial and unlawful."

Neither Mrs. Reichert nor Nelson were assailed in any way, and there was nothing to excite a suspicion in the mind of a cautious man that they were unworthy of credence, and the conduct of the plaintiff at the time of the arrest and her testimony at the trial approaches very close to a confession of guilt.

The question as to when the rent was paid can have no bearing upon the question of probable cause. It could only bear remotely, if at all, upon the question of whether the prosecution was malicious in law—that is, for the private

and selfish purpose of thereby coercing the payment of the rent. If the rent was paid on the 20th, as the defendant testified, the arrest, which was made on the 21st, could not have been made for that purpose, and if paid on the 21st, after the plaintiff had been held for Court, as her husband testified, that isolated fact, unsupported by any suggestion from any source, of any threat before the arrest, or of any promise of leniency after the arrest, would hardly be legally sufficient evidence that the prosecution was malicious in law, though it might be in connection with proof of want of probable cause. But without passing upon the effect of that question as to malice, proof of malice without proof of the want of probable cause could not entitle the plaintiff to recover. Proof of both is essential to recovery, and after a careful consideration of the testimony, which we have detailed quite fully, we have not been able to discover any fact or circumstance from which it could be rationally inferred that the defendant acted without reasonable cause to believe that the plaintiff was guilty of larceny. *Bowen* v. *Tascoe,* 84 Md. 500. It follows therefore that the defendant's first prayer offered at the close of the whole case should have been granted, and that for error in refusing it the judgment must be reversed.

In view of this conclusion, it becomes unnecessary to consider the ruling on the other prayers, or the exceptions relating to the testimony.

> *Judgment reversed, without awarding a new trial, the appellee to pay the costs above and below.*