FITZWATER, Indiv. and t/a Fitzwater Furniture
*v.* TASKER

[No. 35, September Term, 1970.]

*Decided October 16, 1970.*

The cause was argued before HAMMOND, C. J., and
BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Stephen R. Pagenhardt,* with whom was *Norman I.
Broadwater* on the brief, for appellant.

*Louis A. Fatkin* for appellee.

BARNES, J., delivered the opinion of the Court.

The sole question briefed and argued before us in this appeal was whether or not the Circuit Court for Washington County (Rutledge, J.) erred in refusing to direct the verdict in favor of the appellant, Edward Fitzwater, defendant below, on the second count of a declaration filed by the appellee, Roger Tasker, plaintiff below, against the defendant to recover damages for malicious prosecution. The first count of the declaration sought recovery for false imprisonment for which the jury awarded compensatory damages of $9,000, later reduced by a remittitur of $4,-000 ordered by the lower court and accepted by the plaintiff. The net amount of $5,000 recovered under the first count is not challenged in this appeal. The judgment of $5,000 awarded by the jury under the second count for malicious prosecution is challenged on the sole ground that allegedly there was not sufficient proof of a termination of the criminal proceedings in favor of the plaintiff and hence the defendant's motion for a directed verdict, renewed at the end of all the testimony, should have been granted by the trial court. We have concluded that there was sufficient evidence of a termination of the criminal proceedings in favor of the plaintiff and there was no error on the part of the lower court in denying the defendant's motion for a directed verdict.

In considering the defendant's motion for a directed verdict, we must assume the truth of all facts tending to support the plaintiff's right to recover as well as all inferences which may be naturally and reasonably deduced from those facts, even though the facts may be contradicted. As we said in *Tully v. Dasher,* 250 Md. 424, 440-441, 244 A. 2d 207, 217 (1968)—a malicious prosecution case:

> "It is well established that when a defendant moves for a directed verdict in his favor he must, for the consideration of the motion, concede the truth of all facts that tend to support the right

of the plaintiff to recover as well as all inferences which might naturally and reasonably be deduced from those facts, even though these facts may be contradicted. If there is any legally relevant and competent evidence from which a rational mind could infer a fact in issue, the trial court should not invade the province of the jury by directing a verdict for the defendant. *Smack v. Whitt,* 249 Md. 532, 536, 240 A. 2d 612, 615 (1968) ; *Plitt v. Greenberg,* 242 Md. 359, 219 A. 2d 237 (1966) ."

See also *Banks v. Montgomery Ward & Co.,* 212 Md. 31, 128 A. 2d 600 (1957).

Viewing the facts disclosed from the record in the light most favorable to the plaintiff, with all reasonable inferences from those facts, it appears that the defendant Fitzwater on August 1, 1964, sold the plaintiff Tasker a second-hand 1959 Model Plymouth automobile for $795. The down payment for the sale of this automobile was a trade-in of the plaintiff's 1956 model Mercury at a value of $295. In the conditional sales contract executed by Tasker and his wife, Trudy, payments of the balance due of $595 (actually $95 more than the correct balance of $500) together with various additions for insurance, title, tax, and finance charges brought the total amount up to $774.54 which was to be paid in 18 monthly installments of $43.03 commencing on September 6, 1964, and on the same day of each month thereafter. The monthly payments were to be paid at the First National Bank of Oakland in Garrett County.

September 6, 1964, was a Sunday. The following day, September 7, was Labor Day. The bank was closed on both days.[1] The plaintiff Tasker was going to make the $43.03 payment the following Thursday—which was his pay day. On Wednesday, however, while the plaintiff was driving the Plymouth, it developed a broken rotor and would not move. The car was left by the plaintiff on the

---

1. The record is in error in stating that Sunday, September 6, 1964, was a Monday and Labor Day.

road. On Thursday, he purchased a new rotor and returned to the place he had left the automobile but found that it was gone. He later learned that the defendant Fitzwater had towed it away.

Later on Thursday, September 10, Tasker telephoned Fitzwater about the automobile and later consulted counsel in West Virginia where Tasker lived. The following day, Friday, September 11, Tasker saw Fitzwater at the bank where Fitzwater told Tasker to go get his car since he had made his payment, which Tasker did.

Tasker in fact made the monthly payment on September 11, 1964, and the next monthly payment on October 5, 1964, as the bank records indicate. An employee of the bank testified that, in accordance with the bank's policy, the defendant Fitzwater would have received a weekly statement showing any delinquent account.

On September 28, 1964, a warrant was issued under the oath of Fitzwater charging Tasker with larceny of the Plymouth automobile. Tasker was taken into custody in Cleveland, Ohio, where, for medical reasons, he had established a new residence in order to take new employment away from his former work in a West Virginia coal mine. The Cleveland police officers took Tasker into custody on October 23 and after spending several days in jail in Cleveland, he waived extradition proceedings and was turned over to the custody of the Sheriff's office for Garrett County, Maryland. He was returned to Garrett County and confined in the jail there for several more days. He was fingerprinted and photographed both in Cleveland and in Garrett County.

Finally, on October 27, 1964, Tasker was taken before Magistrate Maroney of Garrett County who, upon the oath of Fitzwater, had issued the original warrant for Tasker's arrest. The testimony in regard to the details of what happened before the Magistrate is not entirely clear but Tasker testified that Fitzwater was present and stated that he wanted to drop the charge. The State's Attorney for Garrett County was also present. He testified that he had authorized the Magistrate to enter the case marked

"Stet." Prior to leaving the Magistrate's Court, Tasker requested that he have some evidence that he had been cleared of the charge in order that he might get his job back or at least facilitate his obtaining other employment. Tasker testified that Fitzwater's attorney, who was also present, typed a letter, which was then signed by the Magistrate and given to Tasker. The letter is as follows:

"OFFICE OF THE TRIAL MAGISTRATE
GARRETT NATIONAL BANK BUILDING
OAKLAND, MARYLAND

ROBERT M. MARONEY, MAGISTRATE
EDITH M. BYERS, SECRETARY

TELEPHONE
DEERFIELD 4-3411

"October 27, 1964

"TO WHOM IT MAY CONCERN:

RE: State of Maryland
vs.
Roger Lee Tasker
No. 1837, in the Trial
Magistrate's Court for
Garrett County Maryland

This is to certify that the defendant in the above entitled case was charged with larceny of an automobile. When the case was called for a preliminery [sic] hearing before the undersigned on October 27, 1964, the Prosecuting Attorney for Garrett County had the case marked on the docket "STET", which in effect means that the State was unwilling and unable to prosecute.

/s/ Robert M. Maroney T.M.
Robert M. Maroney
Trial Magistrate for
Garrett County, Maryland"

Magistrate Maroney admitted that he had signed the

letter, which was introduced into evidence and read to the jury, but testified that he had not typed it.

Tasker further testified that when he was going down the steps after receiving the letter from the Magistrate, the State's Attorney said to him: "I'm sorry I wasn't able to prosecute you" and then laughed; but Tasker did not think it a laughing matter in view of all the "trouble, confusion and harassment" he had been through.

Thereafter, Tasker returned to Ohio and subsequently instituted the action involved in this appeal.

The trial court after a careful and comprehensive instruction, submitted the case to the jury on the issues. The jury found the defendant had caused the plaintiff to be arrested illegally and fixed the compensatory damages at $9,000 (later reduced by remittitur to $5,000) and that the defendant had acted with malice fixing the punitive damages at $5,000. It is the judgment for this last mentioned amount of $5,000 which is the subject matter of this appeal, as we have already indicated.

Judge (now Chief Judge) Hammond, for the Court, summarized the applicable law in regard to actions for malicious prosecution in *Banks v. Montgomery Ward & Co., supra,* as follows:

> "To prevail in a suit for malicious prosecution the plaintiff must show: (1) that the criminal proceeding instituted or abetted by the defendant has terminated in his favor, apart from whether any inference as to probable cause for the proceeding arises from the termination; (2) a want of probable cause for the proceeding which may, or may not, be inferred from the termination of the proceeding, depending upon the manner of the termination; (3) malice, which is a primary purpose for the institution of the proceeding, other than that of bringing an offender to justice. *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 173, *supra,* and authorities cited."
>
> (212 Md. at 38, 128 A. 2d at 604.)

As we have stated, the appellant Fitzwater's sole contention is that the criminal proceeding instituted by him did not terminate in Tasker's favor because the criminal proceeding did not end in an acquittal, nor was it withdrawn by Fitzwater, but was rather "suspended out of mercy requested and accepted by the appellee."

The appellant relies on the following statement from our opinion in *Banks v. Montgomery Ward & Co., supra*:

> "It is generally held that if criminal proceedings end in favor of the accused other than by acquittal, because the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused, or out of mercy requested or accepted by the accused, there is not such a termination as will sustain a case for malicious prosecution."
> (212 Md. at 38-39, 128 A. 2d at 604.)

This statement is in accord with the law generally on this subject — see W. Prosser "Law of Torts," 3rd ed. (1964), § 113, pp. 856-858; 54 C.J.S. "Malicious Prosecution," § 58, pp. 1026, 27; *Restatement of Torts*, § 660. In regard to "Indecisive Termination of Proceedings" (in actions to recover damages for Malicious Prosecution), § 660 of the Restatement of Torts states:

> "A termination of criminal proceedings in favor of the accused other than by acquittal is not such a termination as is necessary to a cause of action under the rule stated in § 653 if
>
> "(a) it results from the withdrawal of the charge or the abandonment of the proceedings
>
>   (i) pursuant to an agreement of compromise with the accused, or
>
>   (ii) because of the suppression of evidence or other act done by the accused or on his behalf for the purpose of preventing his conviction, or

>     (iii)  out of mercy requested or accepted
>            by the accused, or if
>
> "(b)  new proceedings for the same offense
>        have been properly instituted and have
>        not been terminated in favor of the ac-
>        cused."

In Comment *d*. under § 660 it is stated:

> "*d*. The abandonment of the proceedings be-
> cause the accuser believes that the accused is
> innocent or that a conviction has, in the natural
> course of events, become impossible or improb-
> able, is a sufficient termination in favor of the
> accused. In such case it is immaterial that the
> proceedings were abandoned at the request of the
> accused rather than upon the uncontrolled initia-
> tive of the private prosecutor."

In W. Prosser, *supra,* at 857, 58 it is stated:

> "* * * it will be enough that the proceeding
> is terminated in such a manner that it cannot
> be revived, and the prosecutor, if he proceeds
> further, will be put to a new one. This is true,
> for example, of an acquittal in court, a discharge
> by a magistrate or a justice of the peace upon
> preliminary hearing, or by a governor in extra-
> dition proceedings, a failure of a grand jury to
> indict which results in discharge, the quashing
> of an indictment, the entry of a nolle prosequi,
> or a dismissal, abandonment of the prosecution
> by the prosecuting attorney or the complaining
> witness, or continuance beyond a time limit,
> where any of these things have the effect of end-
> ing the particular proceeding and requiring new
> process or other official action to commence a
> new prosecution."

See also the comprehensive and helpful annotation en-
titled: "Dismissal by Magistrate or Other Inferior Court

for Lack or Insufficiency of Evidence as a Final Termination of Prosecution as Regards Action for Malicious Prosecution," 135 A.L.R. 784 *et seq.*, following the report of the case of *Jaffe v. Stone,* 18 Cal. 2d 146, 114 P. 2d 335, 135 A.L.R. 775.

In the present case the facts indicate to us that the proceeding before the committing Magistrate, although somewhat irregular, did terminate in favor of Tasker because of the inability or unwillingness of the State's Attorney to prosecute. Magistrate Maroney states this is the effect of the "Stet" in the letter of October 27, 1964, already set out in full. The entry of a "Stet" in its technical sense was inappropriate in the proceeding before the committing Magistrate but its meaning to him was clear as he stated and the Magistrate's action terminated the proceeding in Tasker's favor. The record does not support the contention of the appellant Fitzwater that the proceeding was suspended as an "act of mercy" requested and accepted by Tasker. Rather, the proceeding was terminated by the inability and unwillingness of the State's Attorney to proceed further and this is confirmed by the statement made by the State's Attorney after the proceeding was terminated.

*Jaffe v. Stone, supra,* involved a dismissal by a committing Magistrate for lack of evidence and, in our opinion, this in substance is the situation in the present case. The State's Attorney was "unwilling and unable to prosecute," as the committing Magistrate stated and this means that the prosecutor did not have sufficient evidence upon which to go forward with the prosecution.

In *Banks v. Montgomery Ward & Co., supra,* where there was a somewhat unusual proceeding before the trial magistrate we stated:

"All that went on in the People's Court was somewhat informal and the posting of the money seems to have been regarded as the putting up of collateral. Mrs. Banks insisted upon trial being had. Montgomery Ward was given the op-

tion of swearing out a new warrant and proceeding with the trial, and it was its election that closed the case. We think that the trial did not end in favor of the accused by reason of compromise with, or at the behest of, the accused. For an excellent discussion, pertinent here, on the law of final termination of criminal proceedings in favor of the accused, see *Jaffe v. Stone* (Supreme Ct. of Calif.), 114 P. 2d 335, 338." (212 Md. at 39, 128 A. 2d at 604.)

In the instant case it is our opinion that the prosecution did not end in favor of Tasker by reason of a compromise with him or at his behest or because of the extension of mercy to him by either the prosecuting witness or the State's Attorney. We shall, therefore, affirm the judgment.

*Judgment affirmed, the costs*
*to be paid by the appellant.*