# BREWER *v.* MELE ET AL.

[No. 96, September Term, 1972.]

*Decided December 20, 1972.*

438

The cause was argued before BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ., and CHARLES E. MOYLAN, JR., Associate Judge of the Court of Special Appeals, specially assigned.

*R. Roger Drechsler* for appellant.

*William K. Connor* for appellee Mele and *Cypert O. Whitfill* for appellee Leard.

MOYLAN, J., delivered the opinion of the Court.

It is the realistic judgment of state and national con-

stitutions as well as that of the common law that personal liberties must sometimes yield to the needs of public order upon the basis of probabilities which are less than certainties. The balance, painstakingly arrived at, is adjusted to reduce significantly the incidence of mistake, but it does not presume to eliminate it. That a decision based upon probable cause should upon occasion yield an improbable consequence is of the very nature of such reliance upon probability. Inherent in the process is the sometime bad arrest of the guilty and the sometime good arrest of the innocent.

The appellant, William Brewer, may well have been the victim of one of the mistakes to which the system is sometimes heir. On the early evening of Friday, June 9, 1967, he was arrested at his home on Joppa Road in the Perry Hall section of Baltimore County. He was charged with having received a stolen tractor and with the cognate offenses of grand larceny and breaking and entering. He was transported first to the Benson Police Barracks and then to the Harford County Police Station. He remained in custody for between two and two and one half hours before posting bond to guarantee his reappearance. He set out immediately to demonstrate his innocence. At a meeting on June 22, 1967, with the state's attorney for Harford County, the sheriff, and the deputy sheriff who had been the investigating officer, the appellant, accompanied by his wife and his lawyer, produced not only documentary evidence and the dealer who had sold him the tractor, but two other witnesses to establish that he had been the innocent and bona fide purchaser of the tractor. The state's attorney was persuaded that the charges were unfounded and dismissed the warrants.

To the appellant, criminal vindication was but partial solace. Having been inconvenienced, embarrassed and chagrined at the clutch of circumstance into which he had been thrust, he sued in the Circuit Court for Harford County those he believed to be his tormentors, the appellees Dominic J. Mele and Raymond Leard, for both false imprisonment and malicious prosecution.

Mele was the deputy sheriff for Harford County who had investigated the tractor theft and who had applied for arrest warrants against the appellant. Leard was the state trooper who, pursuant to those warrants, arrested the appellant. The malicious prosecution charge was predicated upon the application for the warrants. The false imprisonment charge was predicated upon the execution of the warrants.

As to the first count (charging false imprisonment and false arrest), separate motions for summary judgment were ultimately granted in favor of both Mele and Leard. No appeal has been taken from the trial court's decision to dismiss the charges of false imprisonment. Mele had presented, under oath, his probable cause to a duly constituted committing magistrate who issued proper warrants of arrest.[1] The arrest having been effected by valid legal process, it is fundamental that an action for the sub-species false arrest of the species false imprisonment will not lie. *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 173-174, 122 A. 2d 457 (1956) ; *Lewin v. Uzuber,* 65 Md. 341, 4 A. 285 (1886). The only charge remaining before us is the kindred one of malicious prosecution.

The necessary elements of a case for malicious prosecution of a criminal charge are well established. There must be: (a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) malice, or a primary purpose in instituting the proceeding other than that of bringing an offender to justice. *Banks v. Montgomery Ward & Co.,* 212 Md. 31, 38, 128 A. 2d 600 (1957) ; *Safeway Stores, Inc. v. Barrack, supra,* 210 Md. at 173; Prosser, *Torts* (4th ed.) p. 835; Restatement, *Torts,* § 653.

The case reaches us with Mele and Leard not simply

---

1. In Fourth Amendment terms, the "neutral and detached magistrate" was interposed between "the policeman and his quarry." Johnson v. United States, 333 U. S. 10, 13-14, 68 S. Ct. 367, 92 L. Ed. 436 (1948).

cast in slightly but critically different law enforcement roles but placed as well in different legal postures for purposes of review. The granting of summary judgment in favor of Leard by the trial judge is before us upon its merits. The granting by Judge Close of summary judgment in favor of Mele, on the other hand, was by way of ex parte hearing after the appellant failed to make timely reply to the motion for the judgment. No direct appeal has been taken from the judgment itself as to Mele. The appellant did, however, subsequently move to strike that judgment, which motion was denied. He appeals from that denial.

In reviewing the granting of the summary judgment itself, we are concerned with whether the trial judge was legally correct. In reviewing the denial of a motion to strike a summary judgment, on the other hand, we are concerned only with whether the trial judge abused his discretion. *Clarke Baridon v. Union Co.*, 218 Md. 480, 147 A. 2d 221 (1958). These are distinct types of decision. The critical question for the trial court vis-a-vis the Leard summary judgment was whether there existed a genuine dispute as to a material fact and, if not, what the ruling of law should be upon those undisputed facts. The critical question for the trial court vis-a-vis the Mele motion was whether the appellant had shown a reasonable indication of a meritorious defense to the motion or other equitable circumstances that would justify striking the judgment—that is, whether the court entertained a reasonable doubt that justice had been done in the earlier granting of the summary judgment. *Abrams v. Gay Investment Co.*, 253 Md. 121, 251 A. 2d 876 (1969) ; *Clarke Baridon v. Union Co., supra; Cromwell v. Ripley,* 11 Md. App. 173, 176-177, 273 A. 2d 218 (1971).

We shall consider first the granting of summary judgment in favor of the arresting officer, Leard, upon its merits. Maryland Rule 610 d 1 is clear, providing in pertinent part:

"The judgment sought shall be rendered forth-

> with if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The purpose of this rule is to determine whether trial is necessary when there is no genuine dispute as to a material fact. *Greenwell v. American Guaranty Corporation,* 262 Md. 102, 277 A. 2d 70 (1971). Thus, inquiry must first be directed to the question whether there exists a genuine dispute of a material fact. *Orrison v. Vance,* 262 Md. 285, 292, 277 A. 2d 573 (1971). In so inquiring, if the facts are susceptible of more than one inference, the materiality of that arguable factual dispute must be judged by looking to the inferences drawn in a light most favorable to the person against whom the motion is made and in a light least favorable to the movant. *Trustees of the Broadfording Church of the Brethren v. Western Maryland Railway Co.,* 262 Md. 84, 85, 277 A. 2d 276 (1971), and cases therein cited. See also *Mason v. Henderson,* 14 Md. App. 370, 374-375, 286 A. 2d 825 (1972). In *Lipscomb v. Hess,* 255 Md. 109, 257 A. 2d 178 (1969), we discussed the nature of the summary judgment procedure, at 255 Md. 118:

> "The limitations on summary judgment procedure are too well known to require elaboration. It is not a substitute for trial but a hearing to determine whether a trial is necessary, * * * when there is no genuine controversy, * * *. The purpose of the hearing is not to determine disputed facts, but to determine whether such issues exist. * * *." (citations omitted)

Judge Close had before him, when he granted the summary judgment in favor of Leard, the depositions of the appellant, of Deputy Sheriff Mele, and of the state's attorney for Harford County. As to the role played by Leard, there was no genuine dispute of any fact, let alone

a material fact. As a Maryland state trooper working in the Harford County area, he was in regular communication with local law enforcement personnel, including Deputy Sheriff Mele. He did, at the urging of Mele, check out one piece of information with a tractor dealer in Kingsville. Leard was not, however, responsible for the investigation of the case. He did not initiate any action with respect to the appellant. He did not confer with the state's attorney. He did not apply for the arrest warrants. Only after the warrants had been issued for the appellant, residing without Harford County, were they turned over to Trooper Leard for execution. We hold that Judge Close was correct in determining, as a matter of law, that Leard was not shown to have instituted, instigated or inspired in any fashion a criminal proceeding against the appellant within the contemplation of the law of torts. The appellant failed to establish the first element of malicious prosecution and the summary judgment as to Leard was properly granted. *Fertitta v. Herndon,* 175 Md. 560, 565-567, 5 A. 2d 502 (1939) ; *Angelozzi v. Cossentino,* 160 Md. 678, 155 A. 178 (1931) ; *McNamara v. Pabst,* 137 Md. 468, 474-475, 112 A. 812 (1921) ; cf. *Nance v. Gall,* 187 Md. 656, 667-669, 50 A. 2d 120 (1946).

Deputy Sheriff Mele, on the other hand, did initiate a criminal proceeding in swearing out the warrants of arrest. 52 Am. Jur. 2d, *Malicious Prosecution,* § 21; Prosser, *Torts* (4th ed.), pp. 836-837. With the dismissal of the warrants by the state's attorney under the circumstances of this case, there was further a termination of the criminal proceeding in favor of the appellant. *Fitzwater v. Tasker,* 259 Md. 266, 269 A. 2d 588 (1970) ; *Norvell v. Safeway Stores, Inc.,* 212 Md. 14, 128 A. 2d 591 (1957). The pivotal element of the case against Mele is the want of probable cause for the initiation of the criminal proceeding. In affirmative terms and in the particular context of this case, the question is, "Did Mele have probable cause for the appellant's arrest?"

Although it is by no means certain that Deputy Sheriff Mele did not, as a threshold matter, enjoy governmental

immunity, it is unnecessary for us to reach the question [2] in view of our disposition of the case on the probable cause issue. There is no national consensus as to how far may extend downward to other officers exercising discretionary functions the absolute privilege or immunity accorded judges in their official acts and accorded prosecutors in judicial hearings.[3] Some jurisdictions make the immunity of the law enforcement officer absolute, provided only that he be acting within the scope of his official duties.[4] Others, including Maryland, condition the immunity upon nonmalicious conduct. *Duncan v. Koustenis,* 260 Md. 98, 104-105, 271 A. 2d 547 (1970). Dep-

---

2. The explicit disclaimer is prompted by the tendency of some commentators to read too much by the way of implication into mere silence. See Annotation, "Civil liability of law enforcement officers for malicious prosecution," 28 A.L.R.2d 646. After cataloging the states ostensibly rejecting the extension of the doctrine of judicial immunity to law enforcement officers, footnote 18 at page 651 betrayed the less than firm foundation for its roll call of authorities:

"In most of the cases cited to the statement above, no express reference to the applicability or inapplicability of the doctrine of judicial immunity was made. However, it is submitted that where the outcome of a malicious prosecution suit against an officer was made by the court to depend upon the presence or absence of such common elements of the tort as malice or want of probable cause, the conclusion is justified that the case stands, at least by implication, for the proposition that the doctrine of judicial immunity does not extend to officers of the kind there involved."

3. Judge Henderson, for the Court, said in Eliason v. Funk, 233 Md. 351, 196 A. 2d 887 (1964):

"It has been held that judges have an absolute privilege from suits arising out of their judicial acts. . . . Prosecutors in judicial hearings are afforded the same privilege. . . . This privilege has been extended to minor tribunals and to officers exercising discretionary or quasi-judicial functions, with a trend toward an equally absolute application, particularly in the federal courts. . . . Some state courts have adopted a broad application. . . . But a number of states extend the privilege only to actions taken in good faith, indicating that malicious actions would not be protected. . . .

The Maryland cases seem to indicate that discretionary action will be protected only in the absence of malice." (citations omitted) 233 Md. at 356.

4. See Prosser, Torts (4th ed.), pp. 837-838; 52 Am.Jur.2d, Malicious Prosecution, Part IV, "Parties Liable or Exempt from Liability," Sect. 68, "Law Enforcement Officers"; Annotation, "Civil liability of law enforcement officers for malicious prosecution," 28 A.L.R.2d 646.

uty Sheriff Mele would qualify for governmental immunity here, barring only the question of his possible malice. As Judge McWilliams said for this Court in *Robinson v. Board of County Commissioners,* 262 Md. 342, 278 A. 2d 71 (1971):

> "It is clear that policemen are 'public officials,' *Wilkerson v. Baltimore County,* 218 Md. 271 (1958), *Harris v. Mayor and City Council of Baltimore,* 151 Md. 11 (1926), and that when they are within the scope of their law enforcement function they are clearly acting in a discretionary capacity. *Eliason, supra.* But, as Judge Barnes suggested, we have added the qualification that when acting in a discretionary capacity public officials, to enjoy immunity, must act without malice. *Duncan, supra* at 104; *Eliason, supra* at 356; *Carr v. Watkins,* 227 Md. 578, 585 (1962); *Carder v. Steiner,* 225 Md. 271, 274 (1961)." 262 Md. at 347.

We have never been called upon to decide that quality of malice or the means of its proof necessary to forestall governmental immunity. If it be some affirmative showing of ill will, improper motivation, or evil purpose,[5] the undisputed facts might well reveal its total absence prior to trial and permit the assertion of the qualified immunity. If, on the other hand, it is the mere inference of malice permitted to be drawn from the want of probable cause,[6] then even a qualified immunity could never

---

5. That is, the quality of malice suggested as necessary to dissipate the governmental immunity of a prison warden and a prison guard in Carder v. Steiner, 225 Md. 271, 275-277, 170 A. 2d 220 (1961), (where the warden was charged with negligence and the guard was charged with assault).

6. Banks v. Montgomery Ward and Co., supra; Safeway Stores, Inc. v. Barrack, supra; Kennedy v. Crouch, 191 Md. 580, 62 A. 2d 582 (1948); Mertens v. Mueller, 119 Md. 525, 87 A. 501 (1913); Cooper v. Utterbach, 37 Md. 282 (1873); Boyd v. Cross, 35 Md. 194 (1872), all cases involving private prosecutions. In Goldstein v. Rau, 147 Md. 6, 13, 127 A. 488 (1925), we said, "Malice is also a necessary element but, *when not negatived,* it may be inferred by the jury from the absence of probable cause, though no express

operate short of a determination of the probable cause issue, which is no immunity at all, but a defense upon the merits.[7] While the underlying rationale that justifies and explains the inference of malice as being an apparent motivation for the bringing by a private person of criminal charges without adequate probable cause would seem harshly inappropriate when applied to the law enforcement officer, whose occupational routine is that of bringing offenders to justice,[8] and while strong countervailing social policy might well come into play on behalf of the officer,[9] it is unnecessary to resolve the question at this time and we explicitly do not do so. The appellant's case here founders upon the shoals of probable cause.

---

malice be shown." (Emphasis supplied.) Goldstein also involved a private prosecution, wherein we did not have to decide whether the governmental status of the prosecutor may not operate, ipso facto, to negative the mere inference of malice.

7. That every technical defect in probable cause stemming from a policeman's misreading of an Aguilar v. Texas or a Spinelli v. United States could permit the inference of malice sufficient to carry a malicious prosecution case to the jury is the ineluctable consequence of such a position. Such broad potential for mischief is hardly compatible with the undergirding juridical philosophy that, "Suits for malicious prosecution are viewed with disfavor in law and are to be carefully guarded against." North Point Construction Co. v. Sagner, 185 Md. 200, 206, 44 A. 2d 441 (1945).

8. The rule might well be that, with respect to such a class of persons, the occupational mission itself, with its manifest motivation, dispels the otherwise permissible inference.

9. That policy is well enunciated in White v. Towers, 37 Cal. 2d 727, 235 P. 2d 209, 28 A.L.R.2d 636 (1951):

"When the duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for the best interests of the community as a whole that he be protected from harassment in the performance of that duty. The efficient functioning of our system of law enforcement is dependent largely upon the investigation of crime and the accusation of offenders by properly trained officers. A breakdown of this system at the investigative or accusatory level would wreak untold harm. 'Criminal law does not enforce itself. It demands the assistance of valid evidence and fearless officials to put it in execution. Because of their tendency to obstruct the administration of justice, it is the policy of the law to discourage actions for malicious prosecution'. . . . To rule otherwise would place every honest law enforcement officer under an unbearable handicap and would redound to the detriment of the body politic. 'The public welfare requires that this choice (whether or not to institute proceedings) shall be free of all fear of personal liability.'" 235 P. 2d at 211.

In his protective cloak of probable cause, Deputy Sheriff Mele is twice blest. Independent of any legal counseling, he accumulated in his own mind ample probable cause to believe that a felony (or felonies) had been committed and that the appellant was the felon. Moreover, Mele enjoys the added protection, irrespective of the correctness of his own evaluation, of having conferred with and relied upon the state's attorney.

As a threshold matter, it is settled that where there is no genuine dispute as to the material facts, the question whether those facts do or do not mount up to probable cause is one of law for the court. *Banks v. Montgomery Ward & Co., supra,* 212 Md. at 42.[10]

The undisputed facts here were that on May 29, 1967, eleven days before the arrest, Deputy Sheriff Mele traveled to the town of Cardiff in northern Harford County to investigate a breaking and entering and a larceny that had occurred over the immediately preceding weekend at the John M. Dooley Company. The proprietor of that tractor dealership informed Mele that a tractor had been stolen which had a fair market value of $522.35. Mele surveyed the scene and determined that a forced entry had been made through a sliding door in the garage portion of the business establishment. He learned that the stolen tractor was a John Deere Model 60 lawn and garden tractor, with the critical last four digits of its serial number being 4657. He learned that the tractor was brand new, notwithstanding the fact that its brake and clutch assembly had been removed. In short, Mele knew that the felonies of grand larceny and of breaking and entering had been committed.

In the course of the investigation that followed, Mele checked with several dealers in the Harford County area who serviced or offered parts for John Deere tractors.

10. See Safeway Stores v. Barrack, supra, 210 Md. at 175; Kennedy v. Crouch, supra, 191 Md. at 590-591; Stansbury v. Luttrell, 152 Md. 553, 556-557, 137 A. 339 (1927) (and cases cited); Boyd v. Cross, supra, 35 Md. at 197. See also Annotation, "Probable cause or want thereof, in malicious prosecution action, as question of law for court or of fact for injury," 87 A.L.R.2d 183.

He alerted them to be on the lookout for anyone coming in and inquiring about brake and clutch parts for the Model 60. In a chance meeting with Trooper Leard, Mele described the investigation that he was then pursuing and requested Leard to make a check for him with the John Deere dealer in Kingsville, in neighboring Baltimore County. In response to that request, Leard called Mele several days later and requested the serial number of the stolen tractor. Upon receiving the number, Leard informed Mele that he had located the tractor. Mele proceeded in person to Kingsville to interview a Mr. Preis at the John Deere agency.

Mr. Preis, it developed, had apparently had two contacts with the stolen tractor. He recalled that, several days before the inquiry made by Trooper Leard, an individual known to him only as "Bill" had been in looking for clutch and brake parts for a John Deere tractor. He did know that this individual worked out of a garage on Old Joppa Road. He was able to furnish a detailed physical description of the appellant—his "Bill." Then after being alerted by Trooper Leard several days later to be on the lookout for a particular tractor, Mr. Preis discovered that an acquaintance of his by the name of Kramer had, in the intervening several days, come into possession of that tractor.

Armed with that knowledge, Deputy Sheriff Mele went to Kramer's home and found the missing tractor. He learned from him that Kramer had received the tractor as well as $125 in cash in a trade for a 1963 Chevrolet with one "Bill Brewer" who lived in the Perry Hall area. He learned that it was when Kramer had trouble with missing parts and went to the John Deere dealer in Kingsville that Kramer had discovered from Mr. Preis that his new tractor might, indeed, be stolen. Kramer turned over to Deputy Sheriff Mele a receipt given to him by Brewer, which established the identity of the appellant and the date of the Kramer-Brewer transaction as June 5, 1967. In short, the investigative trail now led unmistakably back to the appellant; Mele could place

him in possession of the stolen tractor within seven days or less of its theft.

We have long and consistently held that exclusive possession of recently stolen goods, absent a satisfactory explanation, permits the drawing of an inference of fact strong enough to sustain a conviction that the possessor was the thief, *Cason v. State,* 230 Md. 356, 187 A. 2d 103 (1963); *Stapf v. State,* 230 Md. 106, 185 A. 2d 496 (1962); *Lewis v. State,* 225 Md. 474, 171 A. 2d 244 (1961); *Glaros v. State,* 223 Md. 272, 280, 164 A. 2d 461 (1960); *Debinski v. State,* 194 Md. 355, 359-360, 71 A. 2d 460 (1950); or, under appropriate circumstances, that the possessor was a receiver of stolen goods, *Jordan v. State,* 219 Md. 36, 148 A. 2d 292 (1959); *People v. Galbo,* 218 N. Y. 283, 112 N. E. 1041, 1044 (1916); or, where the theft was compounded, that the possessor was also the burglar, *Anglin v. State,* 244 Md. 652, 224 A. 2d 668 (1966); *Howard v. State,* 238 Md. 623, 209 A. 2d 604 (1965); *Boggs v. State,* 228 Md. 168, 179 A. 2d 338 (1962); *Ponder v. State,* 227 Md. 570, 177 A. 2d 839 (1962); *Oden v. State,* 223 Md. 244, 164 A. 2d 284 (1960); *Butz v. State,* 221 Md. 68, 156 A. 2d 423 (1959); *Felkner v. State,* 218 Md. 300, 146 A. 2d 424 (1958); or the robber, *Booker v. State,* 225 Md. 183, 170 A. 2d 203 (1961).

The appellant does not gainsay the accrual of adequate probable cause by Mele in the first instance, but seeks rather to impose upon the investigator, as a condition to action, a second phase obligation not simply to "accentuate the positive" but to "eliminate the negative." He raises the questions, at what stage the existence of a "satisfactory explanation" must be sought out and by whom? Our own prior decisions in *Dorsey v. Winters,* 143 Md. 399, 122 A. 257 (1923) and *Lasky v. Smith,* 115 Md. 370, 80 A. 1010 (1911), are not particularly helpful, both dealing with situations where explanations (in the former case, bad; in the latter case, good) were actually thrust upon private prosecutors in advance of the initiation of proceedings. Having the explanation, they could not with impunity ignore it. Not addressing themselves

to the question whether the prosecutor must seek the explanation, these cases simply speak of the inference having force in the absence of a reasonable explanation.[11]

As to the extent of the initial responsibility, at least so far as a law enforcement officer is concerned, we agree with the reasoning of *Knapp v. Chicago, B. & Q. R. Co.,* 113 Iowa 532, 85 N. W. 769 (1901), where it was held:

> "True, an explanation is admissible, but the prosecutor is not bound to seek it unless the circumstances are such as to call for an investigation." 85 N. W. 770.

Once the investigating policeman has crossed the threshold of probable cause, we will not place upon him the additional burden of seeking out and negating possible explanations of possession, lest he press charges at his own peril. Chief Judge Hammond in *Anglin, supra,* 244 Md. 657, and Chief Justice Fuller in *Wilson v. United States,* 162 U. S. 613, 16 S. Ct. 895, 40 L. Ed. 1090 (1896), both refer to the inference arising out of recent possession as "prima facie evidence of guilt" and speak of it as casting upon the accused the burden of coming forth with a reasonable explanation. The unexplained possession sufficient to clear the judgment of acquittal hurdle at the trial upon the merits is no less adequate to establish probable cause for an arrest.

The explanations that did fill the air, moreover, served only to darken the cloud of suspicion enveloping the appellant. Conflicting stories were attributed to him as to how he came by the stolen tractor. The first version of the acquisition came to the attention of Deputy Sheriff Mele via Kramer via a neighbor of Kramer's by the name of DePasquale.[12] It was DePasquale who first

---

11. See also Bowen v. Tascoe, 84 Md. 497, 36 A. 436 (1897); 52 Am.Jur.2d, Malicious Prosecution, Sect. 74, "Plaintiff's possession of stolen property"; Annotation, "Malicious prosecution: possession of stolen property as probable cause," 172 A.L.R. 1340.

12. The acceptability of hearsay, even thus compounded, in the accumulation of probable cause is fundamental. Hopkins & Terry v. State, 239 Md. 517, 520, 211 A. 2d 831 (1965); Taylor v. State, 238 Md. 424, 209 A. 2d 595 (1965); Shorey v. State, 227 Md. 385, 388, 177 A. 2d 245 (1962); Flickinger v. Wagner, 46 Md. 580 (1877); Cecil v. Clarke, 17 Md. 508 (1861).

learned from the appellant that the tractor was for sale. It was DePasquale who passed this information on to Kramer. The appellant had explained to DePasquale that an acquaintance of his had come into the ownership of a tractor, for which he had no use whatsoever, by way of inheritance. The appellant ostensibly purchased the tractor from that legatee. In sharp contrast to that version, was the version of the acquisition furnished by the appellant to Preis at the John Deere Agency in Kingsville, which was in turn passed on to Deputy Sheriff Mele. The appellant had told Preis that he had purchased the tractor from Providence Motors, the John Deere dealer in the Towson area. Mr. Preis had considered it strange that the appellant would purchase a tractor from one dealer and then seek to purchase parts for that tractor from another dealer.

As developments after the fact revealed, the appellant did, to be sure, have a creditable and innocent explanation for the possession of the tractor; but that subsequent revelation does not retrospectively alter the picture facing the deputy sheriff at his moment of decision. Probable cause will be measured by the circumstances as they reasonably appeared to Deputy Sheriff Mele at the time when he initiated action. It is not dependent upon the actual state of the case as it may turn out upon subsequent investigation. *Jordan v. James & Holstrom Piano Co.*, 140 Md. 207, 117 A. 366 (1922) ; *Chapman v. Nash*, 121 Md. 608, 89 A. 117 (1913) ; *Johns v. Marsh*, 52 Md. 323 (1879) ; *Cecil v. Clarke, supra*, 17 Md. 508. The ultimate innocence of the arrestee is not determinative of the legitimacy of his arrest. The prosecutor's honest belief in guilt based upon reasonable grounds establishes probable cause, even though the accused is, in fact, innocent. *Stansbury v. Luttrell, supra*, 152 Md. 553; *Moneyweight Scale Co. v. McCormick*, 109 Md. 170, 72 A. 537 (1909) ; *Campbell v. Baltimore & Ohio R. Co.*, 97 Md. 341, 55 A. 532 (1903) ; *Central Railway Co. v. Brewer*, 78 Md. 394, 28 A. 615 (1894) ; *McWilliams v. Hoban*, 42 Md. 56 (1875).

Deputy Sheriff Mele had probable cause for the arrest of the appellant. It cannot be supposed, had the appellant here been guilty and had an arrest based upon this quantum of probable cause produced incriminating fruits, that his arrest would have been struck down as unreasonable. No more will it be condemned because the constitutionally sanctioned gamble upon a probability yielded in a particular instance the long shot of outraged innocence. Hindsight will not serve to validate, in a criminal setting, the bad arrest of even the factually guilty; neither will it serve to vitiate, in a tort setting, the good arrest of even the factually innocent.

We cannot say that Judge Close abused his discretion in refusing to strike the summary judgment where the appellant has advanced no indication of a meritorious defense to the motion or other equitable circumstance persuasive of the fact that justice was thwarted by the granting of the judgment. We think, moreover, that the lesser propriety of not having abused discretion is subsumed in the greater propriety of having been correct in the granting of the judgment itself. In the context of this defense to the action, as opposed to the consultation with counsel defense, the appellant does not even suggest a genuine dispute of material fact. The failure of the appellant to show a want of probable cause, as a matter of law, is simply the obverse of the showing that Deputy Sheriff Mele did, as a matter of law, have probable cause to arrest the appellant.

Totally apart from his possession of actual probable cause, Deputy Sheriff Mele was additionally fortified by having conferred with and relied upon the state's attorney. In his deposition, the state's attorney made it clear that Mele had conferred with him on two separate occasions and had discussed the case with him in detail for between ten and fifteen minutes on each of those occasions. In their first meeting, Mele set out for the state's attorney all of the facts unearthed by him as to the corpus delicti. He informed the state's attorney that he had traced the tractor to Kramer and, through Kramer,

to the appellant. He explained that he was persuaded that Kramer was innocent of any wrongdoing. He sought the advice of the state's attorney as to whether the evidence was legally sufficient to charge the appellant. The state's attorney advised Mele to make further inquiry "with people that Brewer may have spoken with regarding the property which was stolen." Mele made such further inquiry and reported back to the state's attorney, informing him of the two versions given by the appellant as to the acquisition of the tractor—the one version given to Preis and the other version given to DePasquale. The evaluation of the evidence and the decision based upon that evaluation were clearly those of the state's attorney. He recited, in his deposition:

"A. . . . I viewed it as a straight simple case of breaking and entering, larceny and/or receiving stolen goods, for the reason he said; there was a breaking and entry and a tractor of such and such a serial number was stolen. There was no question of that, and it wound up in the possession of a man named Kramer who had gotten it from Mr. Brewer, and Mr. Brewer had told two people two different stories of where he had acquired the property. Based on that, I made my recommendation to the officer.

Q. And what was your recommendation to Deputy Mele after having those facts disclosed to you?

A. I told him to take out a warrant charging him with the routine charge of breaking, entry, grand larceny and receiving stolen goods."

Although the deputy sheriff is not entitled to rely upon the submission of his probable cause to the magistrate and upon the independent evaluation made by that magistrate,[13] he is fully protected by having sought and re-

---

13. A hard look at the continuing vitality of this proposition may have to be on the not-too-distant legal horizon. A significant part of the classic rationale for nonreliance upon the review by the

ceived the advice of counsel, specifically the state's attorney, provided only that he shall have made a full and fair disclosure of everything within his knowledge and information and that he subsequently shall have followed the advice given. *Gladding Chevrolet v. Fowler,* 264 Md. 499, 287 A. 2d 280 (1972); *Kennedy v. Crouch, supra,* 191 Md. 580; *Mertens v. Mueller, supra,* 119 Md. 525; *Hooper v. Vernon,* 74 Md. 136, 21 A. 556 (1891); *Hyde v. Greuch,* 62 Md. 577 (1884); *Cooper v. Utterbach, supra,* 37 Md. 282.[14]

In respect of this defense to the action, we cannot say that Judge Close abused his discretion in declining to strike the summary judgment already granted. The appellant gave no indication of a meritorious defense to the motion or other equitable circumstance requiring the trial court to entertain a reasonable doubt that justice had been done. Again the lesser propriety is subsumed in the greater. Even as to the merits of the summary judgment, we think Judge Close was correct. He ruled that there was no genuine dispute as to any material fact. The appellant's desperate effort to get the case to the jury relied upon bald speculation. In recounting his interview with the state's attorney on June 22, 1967, the appellant gives a somewhat impressionistic recollection

magistrate was the historic truth that justices of the peace, unlike lawyers, generally were not learned in the law. 52 Am.Jur.2d, Malicious Prosecution, Sect. 89; Prosser, Torts (4th ed.), p. 844. However, with the recent and growing trend toward the replacement of the part-time lay magistrate with the professional judge, trained in the law, much of the doctrinal underpinning is fast being eroded from beneath the ancient doctrine. Whether the doctrine will live on as an anachronism or will keep pace with the changes in its factual predicate remains to be seen.

The impact upon this aspect of tort law from the Constitutional principle that in evaluating probable cause, the very submission of the issue to the "neutral and detached magistrate" will, in the otherwise "doubtful or marginal case," tip the scales preferentially in favor of probable cause, United States v. Ventresca, 380 U. S. 102, 106, 13 L.Ed.2d 684, 85 S. Ct. 741 (1965); Jones v. United States, 362 U. S. 257, 270, 4 L.Ed.2d 697, 80 S. Ct. 725 (1960); Aguilar v. Texas, 378 U. S. 108, 12 L.Ed.2d 723, 84 S. Ct. 1509 (1964), may also be a fruitful field for future analysis.

14. See also Annotation, "Reliance on advice of prosecuting attorney as defense to malicious prosecution action," 10 A.L.R.2d 1215.

of the conversation from which he gathered that the state's attorney had been misled in two regards by Mele:

". . . I said if they had approached me before this all happened, I could have straightened this damned thing out and he said well, Mr. Brewer, you was approached, and I said no, darned it, I wasn't, and he turned around and said to Mele—he said did you talk with this man, and he said no, and he said why, and he said he wasn't home, and he said something about possession and I said actually, I didn't have possession when I was locked up, arrested, and he said yes, you did, and I said no, sir, I didn't, so he turned around and asked Mele again, he said did he have possession of it, and he said no, he didn't, . . ."

The question whether the appellant at the time of his arrest still had the actual possession of the stolen tractor or had recently relinquished it is immaterial. Even were there a genuine dispute, it would not be of a material fact. The appellant postulates further, on the basis of the state's attorney's other question to Mele, that the state's attorney had directed Mele to interview the appellant and that Mele had apparently failed to carry out that direction and had apparently misled the state's attorney. Only the misleading would be material. In view of the unequivocal testimony of the state's attorney, however, belying that speculation, we concur with Judge Close that there was no genuine dispute as to any material fact. We think further that, upon those undisputed facts, he was correct in ruling, as a matter of law, that Mele had probable cause by virtue of his counseling with and reliance upon the state's attorney.

*Judgments affirmed; costs to be paid by appellant.*